Jabbar K. POPE, Appellant,

v.

UNITED STATES, Appellee.

No. 98–CO–1473.

District of Columbia Court of Appeals.

Argued Feb. 9, 1999.
Decided Oct. 21, 1999.

Douglas J. Wood, Riverdale, MD, filed a motion for summary reversal for appellant.

Valinda Jones, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Assistant United States Attorney, were on the brief, for appellee.

David Reiser, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for Public Defender Service, amicus curiae.

Before SCHWELB, RUIZ, and REID, Associate Judges.

SCHWELB, Associate Judge.

On July 18, 1998, following a hearing, a judge of the Superior Court found probable cause to believe that Jabbar K. Pope had committed the offense of assault with intent to kill while armed (AWIKWA), in violation of D.C.Code §§ 22–503, –3202 (1996). The judge ordered that Pope be preventively detained without bond pursuant to D.C.Code § 23–1325(a) (1996). Pope appealed and filed a motion for summary reversal, contending that the issuance of the detention order was erroneous as a matter of law because the judge based her decision solely on her finding of probable cause and on the circumstances of the

charged offense.[1]  On February 11, 1999, following briefing and oral argument, this court summarily reversed the detention order.[2]  We now issue this opinion to explain the reasons for reversal.

## I.

### THE EVIDENCE

On July 11, 1998, Pope was arrested on a warrant and charged with AWIKWA in connection with the shooting and wounding of Keith Jones on June 29, 1998. The government requested that Pope be preventively detained, and on July 15, 1998, the trial judge held a preliminary hearing which also served as a hearing on the government's request for detention.

The only witness at the July 15 hearing was Detective Brett D. Smith of the Metropolitan Police Department. The prosecutor introduced into evidence an affidavit that Detective Smith had executed in support of an application for a warrant for Pope's arrest. Smith was then cross-examined by Pope's attorney. The preventive detention order was based almost exclusively on Detective Smith's testimony.[3]

Detective Smith testified that during the course of an investigation of Jones' shooting, the police had interviewed an eyewitness who had observed the relevant events. According to Detective Smith, the witness was in the area of the 300 block of Adams Street, N.E. in Washington, D.C. at about 10 p.m. on the evening of June 29. The witness reported that as Jones was walking along the street, Jones was approached by two masked men who began to shoot at Jones with handguns. Jones attempted to elude his assailants by run-

1. The government filed a cross-motion for summary affirmance.

2. Judge Reid noted her dissent from the order of summary reversal.

3. Pope was convicted in 1994 of unlawful possession of cocaine. The underlying offense was committed in 1993. In August

1997, Pope's conviction was set aside pursuant to the provisions of the District of Columbia Youth Rehabilitation Act (DCYRA), D.C.Code § 24–803(a) (1996). At a hearing on November 16, 1998, the judge indicated that she had factored the "expunged" offense into her analysis to "a minimal degree." The judge "recogniz[ed] that it is of little or no additional value."

ning between two cars and hiding under one of them. The two gunmen positioned themselves on different sides of the car, and each man bent down and fired at Jones while he lay beneath the vehicle.[4]

The eyewitness reported to the police that while the two gunmen were firing at Jones under the automobile, one man's mask fell from his face. The witness recognized this shooter, from a distance of approximately twenty feet, as someone whom the witness knew by the nickname "Bar." When asked how long the witness had known Bar, Detective Smith responded that the witness had "known of" Bar for approximately a year. According to Smith, the witness subsequently viewed an array containing nine color photographs, and selected the photo of Jabbar Pope as that of the assailant known to the witness as Bar.

On cross-examination, Smith stated that according to the eyewitness, the gunmen's masks covered their entire faces until one assailant's mask fell off while he was firing at Jones under the car. Detective Smith did not ask the witness how long the witness was able to observe the gunman's unmasked face. Smith had no knowledge of the lighting conditions at the location where the assailant's mask dropped to the ground. The witness provided no description of the assailant with respect to skin tone, age, eye color or weight, but he did state that the man was slim. Detective Smith did not know whether the witness had been drinking prior to the incident or whether the witness had any criminal charges pending against him or her.[5]

The defense presented no evidence. Pope's counsel represented, however, that

Pope's sole conviction had been expunged, see note 3, *supra*, so that Pope had no criminal record. Counsel stated that Pope's parents were in the courtroom, as was Pope's stepfather, a well-known attorney, and that, with the assistance of these individuals, there were conditions short of detention without bond which could assure the safety of the community. Counsel explained that Pope had been employed as a summer intern at a law firm, and he believed that this firm would be prepared to employ Pope as a clerk. Counsel concluded that "when you get to be Mr. Pope's age, in your mid–20's, and you've never been involved in any type of violent activity, that's about as good an indication as any that you're not a violent person," and he predicted that "when we do our investigation, we'll certainly find witnesses who are out there saying it wasn't Mr. Pope."

## II.

### THE TRIAL JUDGE'S DECISION

Although the trial judge was plainly troubled by what she viewed as the relative weakness of the government's identification evidence, she concluded that the evidentiary threshold for preventive detention was not a demanding one, and she ordered that Pope be detained without bond:

> THE COURT: Here's what you have. You've got the thinnest presentation of probable cause—well, not the thinnest, real close to the line on probable cause but you've got probable cause.[6] If these were strangers, you probably wouldn't have probable cause. Because I can't imagine how someone makes a positive identification of a total stranger

4. Jones, who sustained two gunshot wounds in the chest and upper body, was subsequently transported to Washington Hospital Center in critical condition.

5. Smith was asked whether the witness had any previous convictions, but the judge sustained the prosecutor's objection to this question.

6. The judge also stated that if the government went to trial on the "thin" identification evidence that she had heard, then the defendant would "of course" be acquitted. She told Pope's attorney that "[i]f there's nothing more than this ID, you will move for dismissal on the ground of the identification being so unreliable as having no evidentiary value or something to that effect."

or at least how I could find probable cause to credit the identification of a total stranger under lighting conditions that are relatively unknown, probably slightly dark. I don't know how dark but dark. Under stressful circumstances. Even within 20 feet—for some unknown period of time. It's the unknown period of time and the lighting that concerns me.

But there is a positive identification, as opposed to a looks like or I think so. And it is of someone the person knows by nickname and had known for a year,[7] who[m] he sees within 20 feet. So now the light worries me less and the time period worries me less.

*And since probable cause is a very low threshold, it seems to me you've got it.*

(Emphasis added.)

The judge rejected a defense argument that conditions short of preventive detention, such as placement in a halfway house, home monitoring, the posting of bond, or some combination of these conditions, would adequately protect the community:

> THE COURT: What's weak is identification but not so weak that there isn't probable cause. What's powerful is violence and dangerousness. The facts say this isn't a bracelet [8] case. Right? It's not a halfway house case, even with no social passes. This isn't a go get a job

7. In fact, Detective Smith testified that the witness had "known of" Bar for approximately a year. It appears from the context that Smith chose his words carefully and avoided saying that the witness had actually known Bar for that period of time.

8. The judge was referring here to a home monitoring device.

9. On or about August 18, 1998, Pope filed a motion for reconsideration of the preventive detention order. On September 8, 1998, the judge denied the motion because "the violent, egregious and senseless manner in which the offense was committed underscores the danger that the defendant poses to the communi-

and try and be clean through the trial case.

\*     \*     \*     \*     \*     \*

There's probable cause to believe he committed this offense. And, no, it's not anything come trial time but it is something because at the point of making a detention decision, the legislature has said the issue is probable cause to believe that someone committed the offense and then the standard goes up on dangerousness.

Well, the offense—the facts and circumstances of the offense, make the evidence very clear and very convincing that the shooters, both of them, are a danger to this community.[9]

■ Pope filed a timely appeal, and the parties submitted cross-motions for summary disposition. On November 6, 1998, this court remanded the case to the trial court for clarification, *inter alia*, as to whether there was a "substantial probability" that Pope had committed the charged offenses.[10] On November 16, 1998, the judge held a hearing pursuant to the remand and reiterated her prior ruling:

> Nothing has changed since we've had the hearing. The finding was ... probable cause .... There is more than probable cause on the event happening, but there is only probable cause on the identification. So, the court cannot make a substantial probability finding on

ty" and because "an eyewitness to this offense made a positive and credible identification of Mr. Pope as the perpetrator of the offenses charged." The judge also acknowledged the difference between "knowing of" the defendant and "knowing" him, but found the significant point to be that the witness and the defendant were not strangers.

10. " 'Substantial probability' is a standard 'higher than probable cause.' " *Jones v. United States,* 687 A.2d 574, 574 n. 1 (D.C.1996) (quoting *United States v. Edwards,* 430 A.2d 1321, 1339 (D.C.1981) (en banc), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982)).

the entire event, including the identification.[11]

■ The United States and the Public Defender Service, as *amicus curiae*, subsequently filed comprehensive briefs, and presented oral argument, on the question whether the order detaining Pope was consistent with the preventive detention statute and the Constitution. The appeal is now ripe for decision.[12]

## III.

## LEGAL DISCUSSION

Ten years ago, this court, sitting en banc, declined to decide the principal question raised in this case and expressed confidence that the issue would never be presented to us:

> On the facts of this case, we need not decide whether impermissible "bootstrapping" would occur were the government to rely exclusively on probable cause plus the circumstances of the charged crime to show dangerousness by clear and convincing evidence. We are confident that the government will attempt in each case to prove either (1) more than probable cause to believe that the defendant committed the murder, or (2) additional facts manifesting the defendant's dangerousness beyond proof that he committed the offense.

*Lynch v. United States*, 557 A.2d 580, 582 n. 5 (D.C.1989) (en banc). This passage was taken directly from the government's submission to the en banc court, and it was thus an expression of the expectations both of the prosecuting authority and of the court.[13] Nevertheless, notwithstanding our expression of confidence in *Lynch* that "bootstrapping" would not be attempted, the government has now requested and secured a preventive detention order based exclusively on a finding of probable cause and the circumstances of the crime with which the defendant has been charged. The detention order in this case, based solely upon such a foundation, cannot be sustained.

### A. *Standard of review.*

■ In general, our review of a preventive detention order is limited. This court will not substitute its assessment of a defendant's dangerousness for the trial judge's determination of that essentially factual issue, and we will therefore sustain the judge's decision so long as it "is supported by the proceedings below." *Scott v. United States*, 633 A.2d 72, 73 (D.C. 1993) (quoting D.C.Code § 23–1324(b)).

■ In the present case, however, only a single witness testified, and the facts of record, though second-hand, are essentially undisputed.[14] The dispositive question before us is very similar to the one reserved in *Lynch*, namely, whether, in an AWIKWA case, a preventive detention order based on § 23–1325(a) may rest solely on a probable cause finding plus the

---

**11.** On January 8, 1999, the judge entered a brief written order consistent with her oral ruling.

**12.** This court has been advised that on April 1, 1999, approximately seven weeks after we issued our order summarily reversing Pope's preventive detention and stated that an opinion would follow, the charges against Pope were dismissed without prejudice. At the time of our ruling, Pope was in detention and the case was not moot. The present opinion sets forth the legal basis for that ruling. Moreover, the issue before us is capable of repetition, but evades review, and we decline to dismiss the appeal as moot. *See, e.g., Tyler v. United States*, 705 A.2d 270, 273–74 (D.C.

1997) (en banc); *In re Melton*, 597 A.2d 892, 908 n. 32 (D.C.1991) (en banc).

**13.** The court in *Lynch* did not incorporate the last sentence of the proposed language proffered by the government: "We note, however, that D.C.Code § 23–1321(b) (incorporated by reference in § 23–1325(a)) treats as independent factors to be considered 'the weight of the evidence' and 'the nature and circumstances of the offense charged.' "

**14.** There is no indication that Pope has challenged the credibility of Detective Smith. Pope does, of course, dispute the reliability of the information provided to Smith by the unnamed eyewitness.

circumstances of the charged crime.[15] This question is principally one of law, and we review *de novo* the trial judge's disposition of it. *See, e.g., Tyler, supra* note 12, 705 A.2d at 278. Because preventive detention implicates basic constitutional liberties, especially careful review by this court is warranted. *Cf. Griffin v. United States,* 618 A.2d 114, 118 (D.C.1992) (citations omitted).

## B. *Applicable canons of construction.*

■ In construing § 23–1325(a), we are guided by Chief Justice Rehnquist's reminder that "[i]n our society, liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *see also Covington v. United States,* 698 A.2d 1033, 1037 (D.C.1997) (quoting *Salerno*). Preventive detention statutes restrict the liberty of the citizen, and they must be strictly construed to ensure that defendants are not detained without bond "unless the lawmaker has clearly said they should be." *Tyler, supra,* 705 A.2d at 279 (concurring opinion) (quoting *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (citations omitted)).

Moreover, as previously noted, preventive detention issues implicate constitutional concerns. In *Kleinbart v. United States,* 604 A.2d 861, 869 (D.C.1992), we stated that in *Lynch, supra,* the en banc court had "implicitly constitutionalized" the requirement of proof of dangerousness by clear and convincing evidence. *See also Jones, supra,* 687 A.2d at 575. In construing § 23–1325(a), we must include this constitutional backdrop in our calculus.

## C. *The language and structure of the statute.*

The determination whether the detention order should be sustained turns pri-marily on the proper interpretation of the preventive detention statute. We therefore turn first to the statutory language and the now well-settled meaning of some of the phraseology used therein.

(1) *"Reason to believe" and "clear and convincing evidence."*

Section 23–1325(a) provides that a defendant charged with murder in the first degree or with AWIKWA may be detained without bond pending trial if the judicial officer "has reason to believe that no one or more conditions of release will reasonably assure that the [defendant] will not flee or pose a danger to any other person or to the community." The statute does not define the term "reason to believe." Prior to our en banc decision in *Lynch,* this court construed this phrase as permitting detention if the government established probable cause to believe that the defendant had committed the offense. *See DeVeau v. United States,* 454 A.2d 1308, 1315 (D.C.1982), *cert. denied,* 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983). In *Lynch,* however, we overruled *DeVeau* in part, and held that "[t]he trial court, in making a finding of dangerousness under D.C.Code § 23–1325(a), must employ the standard of clear and convincing evidence." 557 A.2d at 581.

The requirement of clear and convincing evidence was based on the Supreme Court's then-recent decision in *Salerno.* We emphasized in *Lynch* that "this standard applies to the ultimate determination of dangerousness which the trial court must make, not to each individual fact on which the court relies." *Lynch, supra,* 557 A.2d at 582. We stated that "[i]n making a finding as to the commission of the offense, the trial court must continue to employ the probable cause standard." *Id.* (citations omitted).

---

**15.** The defendant in *Lynch* was charged with first degree murder while armed (FDMWA). In 1992, some three years after the decision in *Lynch,* the coverage of D.C.Code § 23–1325(a) (1996), under which the defendant in *Lynch* was detained, was expanded, so that some of the provisions of that statute now apply to defendants charged with AWIKWA as well as to defendants who are alleged to have committed armed first-degree murder.

**(2)** *The inapplicability of any rebuttable presumption.*

Section 23-1325(a) creates a rebuttable presumption of dangerousness under certain limited circumstances:

> In any pretrial detention hearing under the provisions of this section, if the judicial officer finds that there is a substantial probability that the person has committed murder in the first degree while armed with or having readily available a pistol, firearm, or imitation firearm, there shall be a rebuttable presumption that *no condition or combination of conditions of release will reasonably assure the safety of any other person or the community.*

The foregoing language makes it plain that a presumption of dangerousness arises only if a judicial officer finds

1. by a substantial probability, that
2. the defendant has committed first degree murder while armed.

No such presumption arises under § 23-1325(a) where the defendant is found by a substantial probability to have committed AWIKWA.[16] The statute likewise makes no provision for a rebuttable presumption of dangerousness based on a finding of probable cause, either as to FDMWA or AWIKWA.

In 1992, the Council amended the preventive detention statute to render it "more accountable to community safety concerns." *See* COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, REPORT ON BILL 9–360, THE BAIL REFORM AMENDMENT ACT OF 1991, at 4 (Jan. 23, 1992) (hereinafter REPORT). Bill 9–360, as originally proposed, would have lowered the threshold showing required to trigger a rebuttable presumption from substantial probability to probable cause. The Committee on the Judiciary rejected this proposal, however, "because it would be too great an erosion of constitutional safeguards. The 'probable cause' standard is too low and would lead to detention in many cases where there is no threat to the safety of the community." REPORT, at 6.

We believe that the thrust of the "rebuttable presumption" provision of § 23-1325(a) is reasonably clear. If the judge finds by a substantial probability that a defendant has committed first degree murder while armed, then that defendant is presumed to be dangerous (and subject to preventive detention) even if his prior record is clean and if no other showing of dangerousness is made. Under the statute, however, *the defendant* can never be presumed to be dangerous solely on the basis of a finding of probable cause that he has committed *an offense* covered by this section (either AWIKWA or FDMWA). All first-degree murders and armed assaults with intent to kill while armed are dangerous, and the facts and circumstances will necessarily be unfavorable to the defense whenever an individual is being prosecuted for either of these grave crimes. Nevertheless, the legislature has not authorized the court to presume that a defendant is dangerous and detainable on the basis of a probable cause finding even of AWIKWA or first-degree murder while armed. To presume dangerousness on the basis of such a finding, looking only at evidence relating to the specific incident underlying the charged offense, without more, would effectively create, by judicial fiat, a presumption broader than the statutory one. This court may not create a non-statutory presumption which would permit detention under circumstances in which the legislature has refused to permit it.

In the absence of a statutory presumption based on a finding of substantial probability the government's burden to prove by clear and convincing evidence

---

**16.** *Cf.* D.C.Code § 23–1322(c)(1), which provides, *inter alia,* that a rebuttable presumption of dangerousness arises if the judicial officer finds by a substantial probability that the defendant has committed a dangerous crime or a crime of violence while armed with a pistol, firearm or imitation firearm.

that the defendant is properly subject to preventive detention therefore cannot be satisfied simply by reference to the known facts regarding the crime of which the defendant has been accused.[17] The court's calculus must include not only the nature and circumstances of the offense charged, but also, *inter alia*, the weight of the evidence against the defendant; the defendant's history and criminal record, if any; his community ties and resources; whether the defendant was on parole, probation, or release pending trial at the time of the charged offense; and the danger that the defendant's release would pose to any person in the community. *Cf.* D.C.Code § 23–1322(e). "[A] defendant's past conduct is important evidence—perhaps the most important—in predicting his probable future conduct." *Cruz-Foster v. Foster*, 597 A.2d 927, 930 (D.C.1991). Substantial weight must therefore be accorded to the presence in (or absence from) the defendant's record of convictions of dangerous crimes or a history of violent conduct.[18]

17. Although we have no occasion to decide the issue, we do not mean to imply that the absence of a statutory presumption for AWIKWA under § 23–1325 means that the trial court may not order pretrial detention in a situation where there has been a determination that there is a substantial probability that the defendant has committed AWIKWA and there is clear and convincing evidence of dangerousness. *Cf. Jones supra*, note 10, 687 A.2d at 575 (noting that there is no constitutional or statutory infirmity in a pretrial detention order, even if the statutory presumption in § 23–1322(c) is inapplicable, where the trial judge has found, by a substantial probability, that the defendant committed the charged offense, and where, after consideration of the statutory factors, the judge has found clear and convincing evidence of dangerousness).

18. The government relies heavily on *Jones, supra*, in which we volunteered, even in the absence of a history of violent conduct, that "[h]ad the evidence shown a substantial probability that appellant tortured the victim, we would scarcely even pause before sustaining a finding that he was clearly and convincingly dangerous." 687 A.2d at 576 n. 3. Because we recognized in *Jones* that "substantial probability" is a higher standard than "probable cause," *id.* at 574 n. 1, that decision provides

### D. *Analysis and synthesis.*

■ We summarize. Having considered the language of the statute, the footnote in *Lynch*, the Council's refusal to lower the threshold for a presumption of dangerousness from substantial probability to probable cause, and the principles of statutory construction discussed above, we are unable to agree with the government's position as to the proper interpretation of § 23–1325(a). In most, if not all, cases, proof of (1) probable cause that a defendant committed AWIKWA and (2) the facts and circumstances of the charged offense, will be insufficient, without more, to establish by clear and convincing evidence that a defendant is dangerous and preventively detainable.[19]

### E. *Application to the evidence of record.*

■ The government apparently argues that this is an unusually strong case of probable cause and that the circumstances, taken as a whole, warrant detention. We do not agree.

little solace to the government in the present case. Here, the judge explicitly found that the government had failed to establish Pope's identity as the shooter by a "substantial probability." This critical factual determination is not challenged by any party.

The question of statutory construction in *McPherson v. United States*, 692 A.2d 1342 (D.C.1997), was whether the time limitations on a preventive detention order issued pursuant to D.C.Code § 23–1322, which deals with detention for crimes other than first degree murder or AWIKWA, apply where the defendant is being held for AWIKWA pursuant to § 23–1325(a). *See id.* at 1344–46. *McPherson* did not present, and therefore could not and did not decide, the question whether a preventive detention order may issue under § 23–1325(a) solely on the basis of a finding of probable cause and the facts and circumstances of the charged offense, and without a finding of substantial probability.

19. Use of the phrase "most, if not all, cases," avoids going beyond the record, for "the future may bring scenarios which prudence counsels our not resolving anticipatorily." *Florida Star v. B.J.F.*, 491 U.S. 524, 532, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989); *see also Roberts–Douglas v. Meares*, 624 A.2d 405, 424 n. 26 (D.C.1992).

It is true that the trial judge found the attempt to kill Keith Jones to be an especially vicious offense. She commented that "this is like shooting into a fishbowl. I mean, the man was under a car." No reasonable person could disagree with the judge's characterization. Without doubt, this record, as developed so far, reflects a merciless, chilling attempted assassination.

But there are few, if any, merciful or non-chilling first degree murders or AW-IKWA's. The facts and circumstances of this case present no dramatic departure from the norm of these intrinsically dangerous crimes. As the Public Defender Service (PDS) points out in its brief as *amicus curiae*,

> [t]he question before the court in a detention hearing is whether *the defendant* would be a danger to the community if released pending trial.[20] This *predictive* judgment depends, as this [c]ourt explained in *Tyler*, "on an *individualized* assessment of information concerning specified items that pertain to the crime charged, the history and characteristics of the person, and the danger that may be posed to others if the person is released." 705 A.2d at 277 (emphasis added).... [T]he inference that a defendant would be a danger if released (*i.e.*, that he would "do it again") cannot be stronger than the factual premise (*i.e.*, that he did it before).

20. We also agree with PDS that "the issue in a detention hearing is whether the evidence clearly and convincingly establishes the dangerousness of the defendant before the court, not how strong the evidence would be that whoever committed a particular offense would be a danger to the community."

21. We have described probable cause as a "flexible, common sense standard," which "does not demand any showing that the officer's belief that he has witnessed criminal behavior be correct or more likely true than false." *Coles v. United States*, 682 A.2d 167, 168 (D.C.1996) (internal quotation marks and brackets omitted) (quoting *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion), *cert. denied*, 519 U.S. 1083, 117 S.Ct. 751, 136 L.Ed.2d

(Emphasis in original.) This reasoning quite properly focuses on the dangerousness of the defendant as well as on the nature of the crime, and reinforces our view that a detention order could seldom, if ever, be sustained on the basis of a finding of probable cause plus the facts and circumstances of the charged offense, standing alone.

To assess the record as a whole, we consider, in turn, the criteria for dangerousness set forth in D.C.Code § 23–1322(e):

1. The circumstances of the offense charged, *see* D.C.Code § 23–1322(e)(1), reflect extremely violent and dangerous conduct. We recognize, at the same time, that few, if any, assaults with the specific intent to kill while armed can be substantially less reprehensible; AWIK-WA is intrinsically an extremely serious crime.

2. The weight of the evidence against Pope, *see* D.C.Code § 23–1322(e)(2), is marginal; indeed, the judge found the identifications sufficient only because she viewed the requirement of probable cause as having a very low evidentiary threshold.[21]

3. With the exception of a single expunged conviction, Pope has no criminal record. There is no evidence of recent drug or alcohol involvement, and Pope apparently has unusually strong commu-

688 (1997)). Linguistically, this definition is somewhat perplexing, for it is not easy to discern how cause can be probable if the officer's belief that the defendant committed a crime is not "more likely true than false."

In any event, we are not prepared to agree that probable cause is a "very low threshold." We have stated, for example, that "articulable suspicion," which is sufficient under the Fourth Amendment to support the seizure of a citizen, "is and was intended to be *substantially* less than probable cause." *Brown v. United States*, 590 A.2d 1008, 1014 (D.C.1991) (emphasis added) (internal quotation marks omitted). If articulable suspicion is substantially less than probable cause, then probable cause is substantially more than articulable suspicion.

nity support and ties. *See* D.C.Code § 23–1322(e)(3)(A).

4. Pope was not on probation, parole, or other supervised release at the time of the charged offense. *See* D.C.Code § 23–1322(e)(3)(B).

The "nature and seriousness of the danger to any person or the community that would be posed by [Pope's] release," *see* D.C.Code § 23–1322(e)(4), therefore turns largely on the strength of the evidence against him. In any event, the enumeration of the foregoing factors demonstrates that although the nature of the crime tends in some measure to support the government's position, the available individualized information about Pope does not demonstrate that he personally is dangerous.

\*    \*    \*    \*    \*    \*

If Pope was indeed one of the shooters, it may well be terrifying to Jones, and perhaps to others, if Pope is released and free to walk the streets. Decisions of this kind are difficult for all concerned, including trial judges and appellate judges. Considerations of community safety must be weighed against the liberty of the citizen. A balance must be struck.

In this case, the government chose to rely solely on Detective Smith's hearsay testimony to present its case for preventive detention. In our view, that testimony, although plainly admissible, was not sufficient to meet the burden imposed upon the prosecution by the legislature (and, arguably, by the Constitution).

Notwithstanding the insufficiency of the government's proof, Pope was detained without bond for seven months. If he is innocent, he will never get his time back. On this record, the preventive detention order cannot be sustained.

### IV.

### CONCLUSION

For the foregoing reasons, we reaffirm our decision summarily reversing the detention order.

*So ordered.*

RUIZ, Associate Judge, concurring:

I join Judge Schwelb's opinion that D.C.Code § 23–1325(a) requires that there must be more than mere probable cause that a particular defendant committed first degree murder while armed or assault with intent to kill while armed before that individual may be detained pretrial. That legal conclusion, based on sound principles of statutory construction, is a correct interpretation of the statutory language viewed in the context of its legislative history, the Council's consideration and rejection of a presumption of dangerousness justifying detention based only on probable cause and the constitutional concerns that guide our interpretation of a statute permitting a deprivation of liberty before there has been a finding of guilt beyond a reasonable doubt. Thus, the sole point on which I do not agree with Judge Schwelb is his reluctance to state unequivocally, *see ante* at 827–28 & note 19, that D.C.Code § 23–1325(a) does not authorize preventive detention based solely on the facts of the underlying incident—not here nor in any factual scenario that might come before the court in the future—if those facts support no more than a finding that there is probable cause that the defendant has committed either first degree murder while armed or assault with intent to kill while armed. Our legal holding of what the statutory language requires, and what the Council intended by it, does not vary depending on the factual circumstances of the underlying crime so long as there is no more than probable cause to believe that the defendant committed it. If probable cause linking a defendant to a crime, alone, is ever to be sufficient to permit pretrial detention, that determination must first be made by the legislature, as expressed in the statutory language it enacts. D.C.Code § 23–1325(a), in its present form, does not permit it.

REID, Associate Judge, dissenting:

I respectfully dissent from Judge Schwelb's opinion reversing the trial

court's order of January 8, 1999 affirming its order of preventive detention relating to Jabbar K. Pope. This matter has been resolved. Pretrial detention functioned as it should have—"to protect the safety of the community until it [could] be determined whether society [might] properly punish [Mr. Pope]." *United States v. Edwards,* 430 A.2d 1321, 1332 (D.C.1981). The government has decided not to prosecute Mr. Pope. Consequently, he has now regained his freedom and the order of detention has been vacated. Now that the pretrial detention order has been vacated, I see no reason to render an opinion. If Judges Schwelb and Ruiz believe that this matter is not moot because it "fall[s] within the 'capable of repetition, yet evading review' category," *Edwards, supra,* 430 A.2d at 1324 n. 2 (citations omitted), in my view, it should be considered by the full court.

Consideration by the full court is warranted because two judges have now decided an issue which, I believe, is one of exceptional importance regarding the interpretation of D.C.Code § 23–1325(a), and have broadly concluded, on the facts of Mr. Pope's case, that it is insufficient under § 23–1325(a) to sustain an order of pretrial detention by relying on (1) probable cause that the appellant committed assault with intent to kill while armed and (2) the facts and circumstances of the charged crime. To appreciate the import of the majority decision, I believe it is important to comprehend the procedural history and the factual background of this case.

After this court remanded this matter to the trial court for further findings under D.C.Code § 23–1325, the trial court responded, in part, by saying on January 8, 1999:

This court further finds that based on the eyewitness identification there is probable cause to believe that the defendant committed the offense of assault with intent to kill while armed, this court further finds that the egregious nature in which the offense occurred establishes that the defendant is a danger to the community; lastly this court finds that based on the combination of these two factors there is clear and convincing evidence that there is no condition nor combination of conditions that will ensure the safety of the community.

During the brief November 16, 1998 proceeding following remand, the trial judge stated, *inter alia:*

The finding was a probable cause finding. There is more than probable cause on the event happening, but there is only probable cause on the identification. So, the court cannot make a substantial probability finding on the entire event, including the identification....

And as I said at the time of the preventive detention finding, this case was as egregious a case as I've ever seen on the issue of dangerousness....

There is a minimal degree to which the Court has factored the possession of cocaine, which has been expunged, recognizing that it is of little or no additional value. And so, what this case comes down to is ... probable cause, plus the nature, the egregious nature in which the offense occurred[. T]he Court concludes that there is clear and convincing evidence that there is no condition, nor combination of conditions, that will ensure the safety of the community. And it is for those reasons that the Court would order the continued preventive detention of the Defendant.

The trial court obviously considered the affidavit in support of the arrest warrant for Mr. Pope, and the testimony of Metropolitan Police Department Officer Brett Smith at the July 15, 1998 hearing on the government's motion for pretrial detention. The arrest warrant affidavit centered on the statement of an eyewitness whose identity Officer Smith and the trial court sought to protect at the hearing by referring to the witness as "it." The affidavit recounted the police department's interview with the eyewitness:

During the course of this investigation an eye witness to this offen[s]e was located and interviewed. This witness related that it was in the area of the 300 block of Adams Street, North East Washington, D.C. on the night of the shooting. It reported that it saw two masked suspects approach the complainant and began to shoot at him. As the complainant ran, he fell between two cars and tried to hide under one of them. At this point the suspects split up one going to either side of the car. They both bent down and began to shoot the complainant while he laid under the car. After firing several times both suspects fled on foot. This witness also reported that during the time the suspects were chasing and shooting at the complainant one of the suspect[']s masks fell down revealing his face.

This witness was shown nine color M.P.D.C. photos. This witness positively identified the defendant as the suspect [whose] mask fell down who was one of the two suspects it saw chasing and shooting at the complainant. The M.P.D.C. photo the witness identified is that of [Mr. Pope] . . . .

In its order of September 8, 1998, incorporated into the order of January 8, 1999, reaffirming the pretrial detention order, "[the] court found that the violent, egregious and senseless manner in which the offense was committed by the defendant underscores the danger that the defendant poses to the community." The court also "found that an eyewitness to this offense made a positive and credible identification of Mr. Pope as the perpetrator of the offenses charged," and that "the eyewitness was not a stranger to the defendant when it made its identification of him."

Given the procedural history and the factual context of this case, I am not prepared to say, without the benefit of thorough supplemental briefing, that § 23–1325(a), its legislative history, and the rules of statutory interpretation mandate the result reached by the majority in this matter. Moreover, notwithstanding footnote 17, *supra*, I am troubled that the majority opinion may be interpreted to say that even on the evidence presented in this case where there is an alleged eyewitness who knew the alleged perpetrator, a finding of substantial probability and the egregious manner in which the crime is carried out, are not enough to sustain an order of pretrial detention. I am also troubled by the majority's criticism of the government for "rely[ing] solely on Detective Smith's hearsay testimony to present its case for preventive detention," even though the majority recognizes that hearsay testimony in pretrial detention matters is admissible. *See Lynch, supra,* 557 A.2d at 582 n. 6. Indeed, the majority in *Lynch* said: "We reject any notion that clear and convincing evidence cannot be established by hearsay, and we decline to erect a presumption in favor of live testimony in § 23–1325 hearings that would be destructive of the government's legitimate need for witness confidentiality at this early stage of the proceedings." *Id.* (citing *Edwards, supra,* 430 A.2d at 1338).

In short, I believe that deeper consideration should be given to the exceptionally important issue resolved in this case. Consequently, I respectfully dissent.