*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 25-FS-0517

IN RE S.M., APPELLANT,

On Appeal from the Superior Court
of the District of Columbia
(2024-DEL-000888)

(Hon. Charles J. Willoughby, Jr., Trial Judge)

(Argued June 3, 2025                          Decided January 29, 2026)

*Sarah McDonald*, with whom *Jaclyn S. Frankfurt* and *Mikel-Meredith Weidman* were on the motion for summary reversal, for appellant.

*Tessa Gellerson*, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Thais-Lyn Trayer*, Deputy Solicitor General, were on the motion to dismiss or to summarily affirm, for appellee.

Before EASTERLY and MCLEESE, *Associate Judges*, and GLICKMAN, *Senior Judge*.

Opinion for the court by *Associate Judge* MCLEESE.

Opinion concurring in part and dissenting in part by *Associate Judge* EASTERLY at page 15.

MCLEESE, *Associate Judge*: This is an emergency juvenile-detention appeal.

The day after oral argument, the court issued a brief judgment order deciding the

appeal and explaining that a fuller opinion would follow. *In re S.M.*, No. 25-FS-517 (D.C. June 4, 2025). This is that fuller opinion.

## I. Factual and Procedural Background

Appellant S.M. is alleged to have committed delinquent acts of theft and shoplifting. She was originally released pending resolution of that allegation, but she subsequently absconded from home and was placed in custody based on a finding that custody was required to ensure her presence at the next hearing. S.M. was released from custody several times thereafter, but she was returned to custody each time after again absconding.

S.M. was returned to custody on April 22, 2025, based on findings that custody was necessary both to secure her presence at the next hearing and to protect the property of others from significant harm. At that point, the trial court placed S.M. in detention at the Youth Services Center. S.M. did not appeal that order.

On May 14, 2025, the trial court changed S.M.'s place of detention to the Youth Shelter House. On May 30, 2025, the trial court held a hearing after receiving reports about problems that S.M. was alleged to have had at the Youth Shelter House, including insubordination and leaving the Shelter House in the middle of the night.

At the close of the hearing, the trial court ordered that S.M.'s place of detention be changed back to the Youth Services Center.

S.M. appealed to this court under D.C. Code § 16-2328. Under that provision, a child who has been detained may file an interlocutory appeal within two days; the court must hear argument within three days (excluding Sundays); and the court must render its decision within a day after argument. D.C. Code § 16-2328(a), (b).

On appeal, S.M. argued among other things that the trial court could move S.M. from the Youth Shelter House to the more restrictive environment of the Youth Services Center only if the trial court found that placement at the Youth Services Center, as opposed to the Youth Shelter House, was "required" either "(1) to protect the person or property of another from significant harm; or (2) to secure the child's presence at the next hearing." D.C. Code § 16-2310(a)(1)-(2).

In response, the District of Columbia argued that the order at issue in this case was not a detention order but rather was merely a placement order that was not subject to Section 16-2328's right of emergency interlocutory review. On the merits, the District argued that a trial court moving a child from one place of detention to another does not have to find that the movement to the new place of detention was required to protect safety or assure the child's appearance.

This court held emergency oral argument and issued a two-page judgment order the following day affirming the trial court's order. *In re S.M.*, No. 25-FS-517. In the order, the court held that (1) it had jurisdiction to consider the appeal under Section 16-2328; (2) the trial court did not have to find that the particular place of detention was required to protect safety or assure the child's appearance; (3) rather, the determination as to the particular place of detention is a discretionary decision, guided by the overall goals of the juvenile-delinquency provisions, D.C. Code § 16-2301.02, in particular the goal that children should be placed "in the least restrictive settings necessary," *id.* at (9), as well as the detention criteria in Section 16-2310(a); (4) although S.M. challenged her detention at the Youth Services Center, she did not specifically argue on appeal that her placement there was an abuse of discretion under the approach just described; and (5) S.M. also did not adequately present on appeal an argument that the trial court abused its discretion by failing to reconsider its earlier detention order. *In re S.M.*, No. 25-FS-517 at 1-2. The court indicated that it would issue a fuller opinion in due course. *Id.*

Judge Easterly concurred in part and dissented in part. *In re S.M.*, No. 25-FS-517 at 2-3. Judge Easterly agreed that the court had jurisdiction, but she would have reversed on the ground that there was no evidence that placement of S.M. at the Youth Services Center was required to protect safety or assure S.M.'s appearance. *Id.*

S.M. filed a petition for rehearing or rehearing en banc. The District opposed the petition, pointing out among other things that after the court's judgment order S.M. was released, absconded, was apprehended, and was again placed in detention at the Youth Services Center. The District argued that the case was now moot and the petition should be denied.

The division directed the parties to submit supplemental filings addressing whether the case was moot, and, if so, whether the division's judgment order should therefore be vacated. In response, S.M. argued that (1) the case was moot because the order at issue was no longer in effect; (2) the issues presented in the appeal are "fact-intensive"; and (3) the court should exercise its discretion to vacate the judgment order and dismiss the appeal. The District argued that the division should not vacate the judgment order because (1) this court "does not apply a strict rule of mootness to dismiss a case because it no longer affects the particular appellant, if it presents a matter of importance that is likely to recur, yet evade review with respect to others similarly situated," *Tyler v. United States*, 705 A.2d 270, 273 (D.C. 1997) (en banc) (citation modified); (2) "the inherently limited time period for pretrial detention renders confinement a practice that would be capable of repetition, yet evading review," *United States v. Edwards*, 430 A.2d 1321, 1324 n.2 (D.C. 1981) (en banc) (citation modified); (3) the issue in this case was capable of repetition even as to S.M., given that S.M.'s detention status has changed repeatedly and the

underlying case is ongoing; and (4) this appeal presents legal issues of general significance, including whether orders like that at issue in this case are subject to the emergency-appeal provisions of Section 16-2328 and whether an order changing a child's place of detention must rest on a finding that the particular place of detention is required to protect safety or assure the child's appearance.

We grant rehearing in part, vacate certain case-specific determinations in our prior judgment order, and more fully explain our reasoning with respect to two issues of general legal significance: whether the order at issue in this case is subject to the emergency-appeal provisions of Section 16-2328 and whether an order changing a child's place of detention must rest on a finding that the particular place of detention is required to protect safety or assure the child's appearance.

## II. Mootness

Essentially for the reasons stated by the District, we exercise our discretion to more fully explain the broader legal conclusions reflected in our prior emergency order. Doing so fits comfortably within the line of cases in which this court has elected to resolve legal issues of general significance arising under detention statutes. *See, e.g.*, *In re G.W.*, 337 A.3d 79, 80-81 (D.C. 2025) (exercising discretion to consider juvenile-detention issue that was "seemingly moot" given juvenile's

release from custody because issue was significant and "could recur and might tend to evade review").

We follow in this case the course we followed in *Pope v. United States*, 739 A.2d 819 (D.C. 1999). That case also involved a detention appeal in which the court issued an order and indicated that an opinion would follow. *Id.* at 823-24 n.12. Although the charges against the defendant in that case were dismissed without prejudice after the court issued its order, the court declined to dismiss the appeal as moot and instead issued its opinion more fully explaining its prior order. *Id.* at n.12.

We do agree with S.M. in part. Some of the issues that we briefly addressed in our judgment order are not of general legal significance. Specifically, we refer here to our holdings that (1) although S.M. challenged her detention at the Youth Services Center, she did not specifically argue on appeal that her placement there was an abuse of discretion under the approach adopted by the division in the judgment order; and (2) S.M. also did not adequately present on appeal an argument that the trial court abused its discretion by failing to reconsider its earlier detention order. *In re S.M.*, No. 25-FS-517 at 1-2. We see no reason to further address or consider those case-specific issues in this opinion. Moreover, to avoid any possible collateral consequences from the discussion of those issues in our judgment order,

we vacate the judgment order in part as moot to the extent that the judgment order addressed those issues.

### III. Jurisdiction

Section 16-2328 provides for emergency interlocutory review at the request of a child who has been "detained or placed in shelter care or subjected to conditions of release." Immediately before the May 30, 2025, order at issue in this case, S.M. was detained at the Youth Shelter House until her next hearing. The May 30, 2025, order was issued after a hearing on that date and provided that S.M. would be sent to the Youth Services Center and kept there until the next hearing in the case, pursuant to an unspecified prior order that had placed S.M. at the Youth Services Center. The May 30, 2025, order thus had two effects: the order continued S.M.'s previously ordered detention, and the order specified a new location of detention. We hold that such orders are detention orders within the meaning of Section 16-2328 and that a child may seek emergency review of such orders.

As a matter of ordinary language, an order that continues a previously ordered detention seems to be naturally viewed as a detention order. *See generally, e.g., Hosp. Temps Corp. v. District of Columbia*, 926 A.2d 131, 136 (D.C. 2007) ("The first step in construing a statute is to read the language of the statute and construe its words according to their ordinary sense and plain meaning.") (citation modified).

Moreover, we see no logical reason why an order continuing previously ordered detention should be immune from interlocutory review. To the contrary, the reasons for permitting interlocutory appeal of such orders seem just a strong as the reasons for permitting interlocutory appeal of orders initially detaining a child.

We further hold that on an emergency appeal challenging an order either initially detaining a child or moving a child from one place of detention to another, a child may challenge not only the determination to detain or continue the detention of the child but also the location of detention. Nothing in the text of Section 16-2328 limits the challenges that a detained child can bring to the order detaining the child. Moreover, we see no reason to limit such challenges to whether detention is warranted, insulating from review under Section 16-2328 the trial court's often very consequential decision about where the child should be detained. Imposing such an artificial limitation seems particularly unwarranted given that Section 16-2328 expressly permits challenges to "conditions of release." It would be very strange to permit children to seek emergency review under Section 16-2328 of conditions of release but to preclude such review of the trial court's decision about where a child should be detained.

We acknowledge that we held in *In re K.H.*, 647 A.2d 61 (D.C. 1994), that an appeal from an order denying a motion to reconsider a juvenile-detention order was

appealable but was not governed by the emergency-appeal provisions of Section 16-2328. *In re K.H.*, 647 A.2d at 62-63. Our concern in *In re K.H.*, however, was that a contrary rule would have permitted children to inundate this court with repeated emergency appeals by filing repeated motions to reconsider detention. *Id.* at 63. We see no such concern in the present context, in which a child seeks review of an order moving the child from one place of detention to another over the child's objection.

## IV. Place of Detention

The final issue is whether, when deciding where to detain a child, the trial court must find that placement in the particular location of detention is required to protect safety or assure the child's appearance. We hold that no such finding is required.

Here too we look first at the language of Section 16-2310(a), which provides that the trial court must find that "detention" is required under the detention criteria, not that the trial court must find that placement in one location of detention as opposed to another is required under the detention criteria. The language of Section 16-2310(a) thus does not support imposing an additional unstated requirement that the trial court find that placement in one particular location of detention as opposed to others is required under the detention criteria. *See generally, e.g., Wright v.*

*Thomas D. Walsh, Inc.*, 856 A.2d 1108, 1111 (D.C. 2004) (declining to adopt interpretation of statute that "would read into the [statute] a provision that is not there").

We acknowledge that the term "detention" is defined as "the temporary, secure custody of a child in facilities, designated by the Division, pending a final disposition of a petition." D.C. Code § 16-2301(13); *see also* D.C. Code § 16-2301(1) (defining "Division" as the Family Division and Family Court of the Superior Court of the District of Columbia). We understand these definitional provisions to require that the trial court designate the location of detention. We do not understand them, however, to impose a requirement that the trial court find that placement in a particular designated location of detention is required to protect safety or assure the child's appearance.

We reach that conclusion in part because we do not understand how it would work to preclude the trial court from placing a child in a given location of detention unless placement in that particular location was required to protect safety or assure the child's appearance. For example, imagine a situation in which it is undisputed that detention is necessary and the trial court is deciding between two possible locations of detention, either of which would suffice to ensure safety and the child's appearance at the next hearing. Further imagine that the child is presently in a less

restrictive place of detention, and the child's behavior there is contrary to the child's interests and seriously disruptive to the other children at that location. It appears to follow from S.M.'s position, and that of the concurring/dissenting opinion, that the trial court would be powerless to move the child to a more restrictive location that would be in everyone's best interests.

For these reasons, we conclude that Section 16-2310(a) should be read according to its plain terms to require only that the trial court find that "detention" is required to protect safety or assure the child's appearance. The separate choice as to a particular place of detention need not turn on such a finding as to the place of detention. Rather, the selection of a particular location of detention is a discretionary decision that should be guided by the overall goals of the juvenile-delinquency provisions, D.C. Code § 16-2301.02, in particular the goal that children should be placed "in the least restrictive settings necessary," *id.* at (9). It would of course be entirely appropriate for the trial court also to consider, in exercising its discretion in selecting a location of detention, the extent to which placement in one location as opposed to another would be warranted to protect safety or assure the child's appearance.

S.M. emphasizes legislative-history materials that reflect concerns that detention of children be a last resort and that secure detention of children can be

harmful. The interpretation of Section 16-2310(a) that we have adopted is consistent with those concerns. Section 16-2310(a) does not permit detention unless detention is required to protect safety or assure the child's appearance. Moreover, a trial court determining where to place a child in detention must exercise informed discretion, taking into account the statutory goal of placing children "in the least restrictive settings necessary." D.C. Code § 16-2301.02(9).

To clarify one point, we do not mean to imply that a trial court that issues an order moving a child from one place of detention to another never needs to consider whether continued detention is warranted under the detention criteria of Section 16-2310(a). To the contrary, at least if the child disputes the need for continued detention, the trial court may not continue to detain the child unless such continued detention is required to either protect safety or assure the child's appearance. D.C. Code § 16-2310(a).

We have three brief responses to the concurring/dissenting opinion. First, to the extent that the concurring/dissenting opinion expresses views about the correctness of the trial court's order in light of the precise circumstances of this case, the concurring/dissenting opinion does not justify addressing that case-specific issue at this time given that the trial court's order is no longer in effect.

Second, the concurring/dissenting opinion rests on a misunderstanding of this court's prior emergency order. Contrary to the assertion in the concurring/dissenting opinion, the emergency order did not hold that the trial court's order should be understood solely as a detention order. *Post* at 15-19 & nn.1-2. Rather, the emergency order acknowledged that the trial court's order could also arguably be viewed as addressing the issue of continued detention but expressed the view (in a part of the order that we now vacate) that S.M. had not properly raised that issue on appeal. *In re S.M.*, No. 25-FS-517 at 2.

Third, the concurring/dissenting opinion also rests on a misunderstanding of the opinion for the court in this case. The opinion for the court does not hold that an order imposing or continuing detention and designating a place of detention is not a detention order. *Post* at 20. Rather, the opinion for the court holds, in accord with the plain language of Section 16-2310(a), that the trial court's determination in such an order as to the particular place of detention need not rest on a finding that detention in that place rather than another is required under the detention criteria of Section 16-2310(a). In other words, such an order can be both a detention order and a placement order, and separate standards apply to each aspect of such an order.

*So ordered.*

EASTERLY, *Associate Judge*, concurring in part and dissenting in part: I agree with my colleagues that this court had jurisdiction to hear this now-moot emergency juvenile-detention appeal under D.C. Code § 16-2328, because the May 30, 2025, order S.M. sought to challenge on appeal directed her to be securely detained prior to the disposition of her delinquency matter at Youth Services Center (YSC), and D.C. Code § 16-2328 expressly provides that "[a] child who has been ordered . . . detained . . . under section 16-2312, may, within two days of the date of entry of the Division's order, file a notice of interlocutory appeal." *See also* D.C. Code § 16-2312(d)(1) (setting forth the procedure for detaining a child and inter alia requiring that the judge make the requisite findings under D.C. Code § 16-2310); D.C. Code § 16-2310)(a) (mandating that "[a] child shall not be placed in detention prior to a factfinding hearing or a dispositional hearing unless [s]he is alleged to be delinquent" and a finding is made that "detention is required (1) to protect the person or property of others from significant harm, or (2) to secure the child's presence at the next court hearing").

I write separately because, with respect to the analysis of the findings a trial court must make to securely detain a child prior to a factfinding or dispositional hearing, I question whether the opinion of my colleagues in fact "more fully explain[s] the broader legal conclusions reflected in our prior emergency order," *ante* at 6—a justification my colleagues provide for issuing an opinion in this moot

appeal, *id.*—and I disagree with their determination that secured placement decisions may be made without regard to the detention criteria in D.C. Code § 16-2310(a)(1) & (2).

In this division's emergency order granting summary affirmance to the District, my colleagues in the majority stated that they were "in general agreement with [the District's] argument" that the trial court had directed that S.M. be detained on April 22, 2025, and at least implicitly held that the May 30, 2025, order S.M. sought to challenge on appeal, was "best understood as an order determining [S.M.'s] place of detention (rather than whether she should be detained)." *In re S.M.*, No. 25-FS-517 at 1. Relying on this holding, my colleagues then concluded that the May 30, 2025 "placement determination" was not subject to the requirements of D.C. Code § 16-2310(a)(1) & (2), even though it was appealable under D.C. Code § 16-2328. *Id.* ("[W]e observe that once the trial judge makes a finding that detention is required under the statutory criteria—as the judge did here in his April 22, 2025, detention order—the statute does not require any further specific findings when the trial judge determines the child's place of detention."); *id.* ("disagree[ing]

with [the District] that we lack jurisdiction over an appeal from such an order under D.C. Code § 16-2328").[1]

By contrast, my colleagues in the majority now recognize in their opinion that—as S.M. argued on appeal—the court's May 30, 2025, order was both a detention and a placement order. *Ante* at 8 (acknowledging that "[t]he May 30, 2025 order . . . had two effects," one of which was to "continue[] S.M.'s previously ordered detention" and the other was to "specif[y] a new location of detention"); *see also id.* (acknowledging that the prior April 22, 2025, detention order directed that S.M. be "detained at the Youth Shelter House *until her next hearing*") (emphasis added). Further, the majority opinion acknowledges that where a "child disputes the need for continued detention," as S.M. did at the May 30, 2025, hearing, "the trial court may not continue to detain the child unless such continued detention is required to either protect safety or assure the child's appearance [per] D.C. Code § 16-2310." *Ante* at 13.

I understand my colleagues wish to avoid "express[ing] views [in this moot appeal] about the correctness of the trial court's order in light of the precise

---

[1] My colleagues in the majority assert that my opinion "rests on a misunderstanding of [their] prior emergency order." *Ante* at 14. My quotes from the emergency order above the line speak for themselves; they make clear that my colleagues did not view the May 30, 2025, order as a detention order and relied on this determination to deny S.M. relief.

circumstances of this case." *Ante* at 13. But only through an acknowledgement of those facts does it become clear that my colleagues in the majority have changed their tune.[2] They are not "more fully explain[ing] the broader legal conclusions reflected in [their] prior emergency order," *ante* 7, because, under the analysis they now endorse, they should have reversed, not affirmed, the trial court's detention decision. At the May 30, 2025, hearing, S.M. "dispute[d] the need for continued detention" anywhere: She argued that she should be allowed to go home. Nonetheless, the trial court did not justify her "continued detention [a]s required to either protect safety or assure [her] appearance." *Ante* at 13. S.M. argued on appeal that this was error—*see, e.g.*, Oral Arg. at 30:35-30:46 & 32:47-33:30 (arguing S.M. should be released or at minimum be granted a remand when asked what should happen if the division held that "the [trial court] was required to make some kind of a statutory finding that detention at least . . . was required by one of

---

[2] As part of their effort to dispute that their views have changed, *see supra* n.1, my colleagues assert that they "acknowledged [in the emergency order] that the trial court's order could also arguably be viewed as addressing the issue of continued detention but expressed the view (in a part of the order that we now vacate) that S.M. had not properly raised that issue on appeal." *Ante* at 14. But, to support this assertion, they appear to call attention to a unhelpful passage of the emergency order where they acknowledged that "the May 30, 2025, order could arguably be viewed as in part the *denial of a request to reconsider the April 22, 2025, detention order*," and then noted that S.M. had failed to explain why the trial court had "abused its discretion under the standards that apply to motions to reconsider." *In re S.M.*, No. 25-FS-517 at 2 (emphasis added).

the statutory prerequisites and the trial court didn't do that")—and, under the analysis set forth in the majority opinion, S.M. was correct. If the majority wishes to "more fully explain [its] broader legal conclusions," it should acknowledge that, on reconsideration, the District was wrong to take the position that the trial court had no obligation on May 30, 2025, to reassess S.M.'s continued detention under D.C. Code § 16-2310(a)(1) & (2), and this court was wrong to affirm the trial court's order detaining S.M. at YSC without making any findings as to why her detention was necessary.

Instead of acknowledging that the trial court failed to make the requisite findings under D.C. Code § 16-2310(a)(1) & (2) when it issued a new order detaining S.M. on May 30, 2025, the majority focuses on the court's concurrent decision to move S.M. to a jail-like setting at YSC and concludes that a placement decision standing alone need not be justified under D.C. Code § 16-2310(a)(1) & (2). *Ante* at 10-13. For the reasons stated above, I do not believe this case ever presented the issue of whether a placement decision alone must be justified under D.C. Code § 16-2310(a)(1) & (2), and I do not understand why this moot appeal is being used to explicate this point. (I am also doubtful that this issue will arise in the future; certainly, one can expect going forward that competent counsel seeking to challenge their juvenile client's secure detention will regularly challenge both the child's detention under D.C. Code § 16-2310(a)(1) & (2) and their placement at

YSC.)  In any event, I am unpersuaded as a statutory matter by the majority's attempt to bifurcate this analysis.

The majority holds that a placement decision need only "be guided by the overall goals of the juvenile-delinquency provisions, D.C. Code § 16-2301.02, in particular the goal that children should be placed 'in the least restrictive settings necessary,'" without regard to whether such placement advances the goals of detention to "protect safety or assure the child's appearance" in court.  *Ante* at 12.  I see two problems with this analysis.

First, the majority's holding injects confusion into the juvenile statutes by ascribing two different meanings to a "detention order."  According to the majority, a placement decision constitutes a detention order under D.C. Code § 16-2328(a) (authorizing a child who "has been ordered . . . detained . . . under section 16-2312 . . . [to] file a notice of interlocutory appeal"), but a placement decision is not a detention order under D.C. Code § 16-2310(a) (directing that one of two prerequisites—the need to protect the person or property of others or to secure the child's presence in court—be satisfied to "place[] [a child] in detention" predisposition) and § 16-2312(d)(1)(A) (requiring a judge "order[ing] detention" predisposition to "set[] forth in writing his reasons therefor, if he finds that the child's detention . . . is required under . . . § 16-2310").

Second, the majority's holding disregards the fact that the many goals of the juvenile delinquency system set forth in D.C. Code § 16-2301.02—which include "treat[ing] children as children," "promot[ing] youth development," keeping children with their families, rehabilitating children, providing for public safety, serving children in their own neighborhood and community, and lastly, "achiev[ing] the foregoing goals in the least restrictive settings necessary"—are advanced by the procedures mandated in the statutory provisions that follow. In particular, D.C. Code § 16-2310 provides that there are two, and only two, legitimate justifications for detaining a child. These justifications will necessarily inform where a detained child should be placed, and it is within that context that courts should conduct the "least restrictive setting[]" analysis of detention and placement.[3] *See In re K.G.*, 178

---

[3] The majority hypothesizes a scenario unlike the one presented in this case where it is "undisputed" that predisposition "detention is necessary" under D.C. Code § 16-2310(a); the child is detained in "a less restrictive place of detention"; but the court wishes to move the child because the child's behavior in the less restrictive detention location "is contrary to the child's interests and seriously disruptive to the other children at that location." *Ante* at 12. The majority then observes that "[i]t appears to follow from S.M.'s position, and that of the concurring/dissenting opinion, that the trial court would be powerless to move the child to a more restrictive location that would be in everyone's best interest." *Id.* The majority provides no explanation why this understanding of the juvenile detention statutes would be wrong; rather, it appears to think that such conclusion is obvious. I disagree.

As noted above, the detention of juveniles is disfavored and carefully statutorily regulated. If a trial court cannot not say that more restrictive detention is necessary either "to protect the person or property of others from significant harm," or "to secure the child's presence at the next court hearing," D.C. Code

A.3d 1213, 1217 (D.C. 2018) (explaining that "[b]ecause the goals of § 16-2301.02 apply to 'all phases' of a juvenile delinquency case, other statutory provisions" like "D.C. Code § 16-2310 (setting forth the procedures for detaining children alleged to be delinquent) . . . must be read and applied with the purpose and goals of § 16-2301.02 in mind"). Indeed, the majority acknowledges that it would be "entirely appropriate for the trial court also to consider, in exercising its discretion in selecting a location of detention, the extent to which placement in one location as opposed to another would be warranted to protect safety or assure the child's appearance." *Ante* at 12. But this acknowledgement has a troubling flipside; it implicitly recognizes that there are situations in which the court can disregard the basis for detention when making placement decisions and exercise discretion from an unknown provenance to order children to be placed in more restrictive detention facilities for reasons unrelated to the detention decision.

Because I think the majority's analysis misreads the statutory scheme and erroneously constricts meaningful review of decisions to place children in secure

---

§ 16-2310(a)(1) &(2), I see no wellspring of discretion in the juvenile detention statute that would allow the court to move a child from a shelter house to the jail-like setting of YSC. Certainly, the majority provides no statutory basis for the propositions that (1) jail-like detention can be in a child's interest even when it does not advance the objectives of D.C. Code § 16-2310(a), (2) "serious[] disrupti[on]" to others short of "significant harm" to their person or property is a cognizable basis for increasing the level of a child's detention, or (3) "everyone's best interests" should be taken into account when making secured detention decisions.

detention, I respectfully concur in part and dissent in part from the majority's opinion.