Marcus COVINGTON, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CO–546.

District of Columbia Court of Appeals.

Submitted April 30, 1997.

Decided Aug. 14, 1997.

Christopher Warnock, Washington, DC, filed a motion for summary reversal, for appellant.

Eric H. Holder, Jr., United States Attorney at the time the motion was filed, and John R. Fisher, Assistant United States Attorney, filed a motion for summary affirmance, for appellee.

Before SCHWELB and RUIZ, Associate Judges, and KERN, Senior Judge.

SCHWELB, Associate Judge:

On March 27, 1997, a hearing commissioner ordered that Marcus Covington, a defendant in a misdemeanor threats case,[1] be detained without bond pending trial pursuant to D.C.Code § 23–1322(b)(1)(C) (1996). That provision authorizes such "preventive" detention in cases presenting

> [a] serious risk that the [defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness or juror.[2]

On April 7, 1997, a judge of the Superior Court sustained the commissioner's order.

Covington filed a timely appeal, and both parties filed motions for summary disposition. On May 9, 1997, in an unpublished order, this court summarily reversed the detention order. We did so because

1. the prosecution had failed to show that the alleged victim of the threats, namely T.K., the fourteen-year-old mother of Covington's child, was a "prospective witness"

or that Covington knew that she was a prospective witness; and

2. the prosecution had not demonstrated the existence of any nexus between the alleged threats and T.K.'s purported status as a prospective witness.

We now issue this opinion because Covington's appeal presented questions not previously addressed by this court.

## I.

This case had its genesis in a child neglect proceeding involving S., the daughter of T.K. and Covington. S. was twenty-one months old at the time of the alleged threats. It appears that T.K. had alleged in the neglect proceeding that Covington had abused her. On November 26, 1996, the judge in that proceeding issued an order directing Covington to stay away from T.K. The judge did not, however, prohibit contact between Covington and his daughter S.

The criminal prosecution of Covington for threatening T.K. arose from his attempt, on March 27, 1997, to visit his child. At the pretrial detention hearing, the government introduced the testimony of T.K. and of T.K.'s cousin, who was also present when the events in question transpired. The evidence at the hearing showed that, at the suggestion of T.K.'s aunt or cousin, notwithstanding the stay-away order, Covington came to the home where T.K. was living in order to visit his daughter at a time when T.K. was not expected to be at home. As it turned out, however, T.K. was present when Covington arrived. An argument erupted, and Covington became loud, angry, and abusive. Confronted with the stay-away order, Covington announced that "I don't give a fuck about that paper." According to the testimony, Covington repeatedly stated that "I'm a kill that bitch," and he pointed at T.K. while making these threats. Covington also physically pulled an earring out of T.K.'s ear. T.K. called 911, and Covington was arrested on the premises.

---

1. *See* D.C.Code § 22–507 (1996).

2. Preventive detention may be ordered only if a judicial officer finds by clear and convincing evidence that no other condition or combination of conditions will reasonably assure the appearance of the defendant as required or the safety of any other person in the community. D.C.Code § 23–1322(b)(2) (1996).

The hearing commissioner found it to be substantially probable that Covington knowingly violated the stay-away order, that he threatened and assaulted T.K., and that he "pose[d] a serious risk" to T.K.'s safety. The commissioner concluded that because, in her view, T.K. was a prospective witness in the neglect proceeding concerning S., a statutory presumption of dangerousness applied. *See* D.C.Code § 23–1322(c)(2) (1996) (creating a presumption of dangerousness, *inter alia*, where the defendant has "threatened ... a prospective witness in any criminal investigation or judicial proceeding"). The commissioner further held that Covington, having presented no evidence, had failed to rebut the statutory presumption. Finally, the commissioner found by clear and convincing evidence that no condition or combination of conditions, short of pretrial detention, would reasonably assure the safety of persons in the community. *See* D.C.Code § 23–1322(b)(2) (1996). In conformity with these findings, the commissioner ordered that Covington be detained without bond pending trial.

## II.

■ The hearing commissioner's detention of Covington in this case was based on her conclusory finding that T.K. was a "prospective witness" in the neglect proceeding. The government does not claim, nor can it, that if T.K. was not a prospective witness, Covington would nevertheless have been subject to pretrial detention under D.C.Code § 23–1322. The commissioner provided no explanation for this finding, either in her written order or orally at the detention hearing.

Our examination of the record reveals no basis for a finding that T.K. was a "prospective" witness in the neglect case. The commissioner correctly noted that a child neglect

proceeding had been instituted, and that the judge in that case had issued a stay-away order against Covington. There is nothing at all in the record, however, to suggest that an evidentiary hearing was scheduled in the neglect case at any time in the future, or that T.K. would be a witness if a hearing were to be held at some hypothetical future date.[3]

Moreover, during the course of the detention hearing, the commissioner specified that in order to establish that it was entitled to a detention order, the government must prove that Covington "*knew* that T.K. was a prospective witness in the [neglect] case." (Emphasis added.) The prosecutor responded: "That's correct, Your Honor." Since the prosecution failed to prove that T.K. was a prospective witness, there was no factual predicate for a finding that Covington knew that T.K. was in that protected category.

Because the judge in the neglect proceeding had issued a stay-away order, the hearing commissioner evidently assumed, after considering the file in the neglect case, that Covington was aware of that order. The commissioner also apparently inferred, although she did not explicitly find, that T.K. must have been a witness in the neglect proceeding prior to the issuance of the stay-away order, and that Covington must have known that she was. Section 23–1322(b)(1)(C) does not, however, contemplate preventive detention in cases of intimidation of witnesses who have testified in the past but who are not expected to testify again. On the contrary, the statute is aimed at proceedings that have not yet taken place, and authorizes pretrial detention where there is a serious risk that the defendant will threaten, injure, or intimidate a "*prospective* witness." There was no evidence that T.K. was a *prospective* witness in the neglect case, or that Covington knew that she was.[4]

3. After a child has been found to be neglected, the court is required by statute to conduct periodic reviews. *See* D.C.Code § 16–2323 (1997). Typically, however, the court reviews a report from the agency responsible for the supervision of services to the child or family, *id.* § 16–2323(b), and the taking of oral testimony is the exception rather than the rule.

4. By the time of the detention hearing, T.K. had become an actual witness at that hearing, and

she was undoubtedly a prospective witness at the trial of the threats case. Before the commissioner, however, the government argued only that T.K. was a prospective witness *in the neglect proceeding.* Indeed, the commissioner explicitly so found, and she ruled that "the neglect case is a judicial proceeding." Even if the detention order had been predicated on the theory that T.K. was a prospective witness in the threats case, it could not be sustained, for there would

## III.

■ Even if T.K. had been shown to be a "prospective witness," the evidence was insufficient to support the commissioner's order because the prosecution failed to establish any nexus between the alleged threats and T.K.'s hypothetical status. In our view, the applicable statute cannot reasonably be construed, on such a record, as authorizing preventive detention.

The government argues that the "plain language" of Section 23–1322(b)(1)(C) makes it unnecessary to establish any connection between the threats and the victim's status as a prospective witness. The statute authorizes detention if there is a serious risk that the defendant "will ... obstruct justice *or* intimidate ... a prospective witness" (emphasis added), and according to the government, the use of the disjunctive "or" means that proof of intimidation of a prospective witness is sufficient, regardless of whether or not the threat was aimed at the victim's prospective testimony.

We think that the government's argument proves too much. If that position is taken to its logical conclusion, then Covington could be preventively detained even if T.K. were a prospective witness in, say, a copyright infringement proceeding or a landlord-tenant dispute with which Covington had no connection and in which he had no interest. If the government were right, then detention without bond could be justified on the basis of the mere coincidence that T.K. was expected to testify in a completely unrelated case. This cannot be what the Council intended. Here, the absence of evidence that Covington even knew that any hypothetical testimony by T.K. was impending made it impossible for the commissioner to find the necessary purposeful relationship between the threats and T.K.'s status as a witness.[5]

■ Preventive detention in cases of witness intimidation is not new to our nation's jurisprudence. In *Carbo v. United States*, 82 S.Ct. 662, 7 L.Ed.2d 769 (1962), Justice Douglas, sitting as Circuit Justice, wrote that "the safety of witnesses ... has relevancy to the bail issue," and that "[k]eeping a defendant in custody during the trial to render fruitless any attempt to interfere with witnesses or jurors ... may, in the extreme or unusual case, justify denial of bail." *Id.* 82 S.Ct. at 668 (citations and internal quotation marks omitted). In *United States v. Gilbert*, 138 U.S.App. D.C. 59, 60–61, 425 F.2d 490, 491–92 (1969), the court, relying in part on *Carbo*, held that courts have the power to confine the defendant "in order to protect future witnesses at the pretrial stage as well as during trial." In *Blunt v. United States*, 322 A.2d 579, 584 (D.C.1974), this court stated that "a trial court is not prevented from acting to protect a witness from threats by a defendant, and thus safeguarding the integrity of its own process." In *United States v. Edwards*, 430 A.2d 1321 (D.C.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982), we recognized that "[t]he traditional reasons for pretrial detention, preventing flight or the intimidation of witnesses," are designed to preserve "the integrity of the judicial process." *Id.* at 1332. In construing Section 23–1322(b)(1)(C), we should keep in mind this traditional justification for the detention of defendants in cases of witness intimidation; the courts in the cited cases obviously contemplated the existence of a connection between the status of the witness and the defendant's coercive conduct.[6]

---

have been no nexus between the threats and T.K.'s status as a prospective witness. See Part III, *infra*.

**5.** We do not suggest that the existence of the required nexus necessarily depends on proof of a statement or acknowledgment by the defendant linking the threat to the prospective witness' status. If the defendant knows that the victim is a prospective witness, the judicial officer is free to consider all of the evidence, direct and circumstantial, in determining whether a purpose-ful relationship exists between the threat and the victim's forthcoming testimony.

**6.** Until its most recent amendment, *see* the Bail Reform Amendment Act of 1992, *see* D.C. Law 9–125, 39 D.C.Reg. 2134 (1992), the statute contained an explicit requirement that an intent to obstruct justice must be shown. Prior to 1992, preventive detention was authorized in the case of "a person charged with any offense if such person, *for the purpose of obstructing or attempting to obstruct justice*, threatens, injures, intimi-

The witness intimidation provision on which the government relies appears in the same sentence as a provision authorizing detention in cases in which there is a substantial risk that the defendant will obstruct justice or attempt to do so. Moreover, the immediately preceding sub-section—D.C.Code § 23–1322(b)(1)(B)—authorizes preventive detention in criminal prosecutions for the statutory offense of obstruction of justice. *See* D.C.Code § 22–722 (1996). Considering the statute as a whole, we do not think that Section 23–1322(b)(1)(C) was designed to remove the concept of witness intimidation from its traditional moorings in obstruction of justice jurisprudence. We are reinforced in that conclusion by Chief Justice Rehnquist's observation for the Court in *United States v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987), that "[i]n our society, liberty is the norm, and

detention prior to trial or without trial is the carefully limited exception." *See also Best v. United States,* 651 A.2d 790, 792 (D.C.1994) (per curiam) (quoting *Salerno* ).

### IV.

For the foregoing reasons, we reaffirm our reversal of the detention order and our remand of the case to the trial court with directions to set appropriate conditions of release.

*So ordered.*

---

dates, or attempts to intimidate any prospective witness or juror." (Emphasis added.) *See* D.C.Code § 23–1322(a)(3) (1989).

"[A] change in legislative language gives rise to the presumption that a change was intended in legislative result." *United States v. Brown,* 422 A.2d 1281, 1284 (D.C.1980). An examination of the legislative history of the 1992 statute, however, reveals no discussion whatsoever of this change from prior law. We think it unlikely that the Council would have enacted a major expansion of the availability of preventive detention in witness intimidation situations without any debate or explicit consideration whatever. *Cf. National Org. for Women v. Mutual of Omaha Ins. Co.,* 531 A.2d 274, 276 (D.C.1987).