Jovanda BLACKSON, Appellant,

v.

UNITED STATES, Appellee.

No. 06–CO–103.

District of Columbia Court of Appeals.

Argued March 1, 2006.

Decided April 6, 2006.

Nikki Lotze, Riverdale, MD, for appellant.

Elizabeth Trosman, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and Roy W. McLeese III, Jennifer M. Anderson, Valinda Jones and Youli Lee, Assistant United States Attorneys, were on the brief for appellee.

Before SCHWELB and GLICKMAN, Associate Judges, and PRYOR, Senior Judge.

GLICKMAN, Associate Judge:

Jovanda Blackson appealed the trial court's refusal to reconsider her pretrial detention, and the parties filed cross-motions for summary reversal or affirmance. After holding oral argument and determining that we had jurisdiction to hear the

appeal and that the record does not support a finding of dangerousness by clear and convincing evidence, we reversed the detention order.[1] This opinion explains our decision.

## I.

Appellant was arrested on August 31, 2005, and charged with corruptly obstructing the due administration of justice in an official proceeding in violation of D.C.Code § 22–722(a)(6) (2001 & 2005 Supp.). The government moved for appellant's detention without bond pursuant to D.C.Code §§ 23–1322(b)(1)(B), 1322(b)(1)(C).[2] The trial court held a hearing on the motion on September 2, 2005.

According to Detective Michael Irving, who summarized the government's evidence, the obstruction charges against appellant arose out of her service as a juror in the May 2005 first-degree murder trial of Harry Ellis and Lamiek Fortson. After the trial ended with a hung jury, a dismayed fellow juror complained to the government that appellant had derailed the process by refusing to deliberate properly. The complaining juror reported that appellant told other jurors she knew Fortson, insisted on finding both him and his co-defendant not guilty no matter what the other jurors might say to her, told the other jurors not to talk to her, cursed at them several times, and "at one point made gestures as if taking one hand hitting the other hand, making comments while [she] was doing so." Although the juror did not report any overt threats or violent acts on appellant's part, she and others on the jury felt "threatened" by appellant's behavior.

Fortson had been detained during his trial at the Central Treatment Facility. Like other prison institutions, the facility routinely recorded all outgoing telephone calls made by its inmates.[3] As part of his investigation into the allegations against appellant, Detective Irving listened to Fortson's recorded telephone conversations, a large number of which were to his wife, Erica Williams. Those conversations, guarded as they were, revealed that appellant and Fortson had recognized each other during jury selection—appellant surreptitiously winked at him—and that appellant had communicated secretly with Fortson's wife throughout the trial. Appellant had informed Williams about the jury's deliberations, and Williams had supplied appellant with arguments to make in an effort to persuade the jury to acquit him.[4]

1. Our judgment, which issued on March 2, 2006, directed the trial court to set conditions of release forthwith in conformity with D.C.Code §§ 23–1321, 1322(f) (2001 & 2005 Supp.), after providing the parties with an opportunity to be heard thereon. The judgment noted that Judge Pryor would have remanded the record to the trial court for more complete findings in compliance with D.C.Code § 23–1322(g).

2. Under D.C.Code § 23–1322(b)(1)(B) and (C), the government may seek pretrial detention in a case that involves a charge of obstruction of justice (subpart B) or "[a] serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness or juror" (subpart C).

3. An announcement at the start of each call notified both parties to the call that it was being recorded.

4. Additional evidence recovered in a police search of Williams's home included a personal phonebook with appellant's first name and phone number in it, and a note apparently written by appellant stating that the number was "safe" and "not under surveillance." The note also stated that "a juror" (not otherwise identified) who "apparently knows someone associated to the deceased" "keeps trying to talk to me." (At some point during Fortson's trial, Detective Irving testified, a juror

Detective Irving was the sole witness at the detention hearing. Based on his testimony, the trial court found a "substantial probability" that appellant had committed obstruction of justice as charged. Appellant's motive for doing so was obscure. Government counsel observed that she did not have a close personal relationship with Fortson or Williams, and there was no evidence that she had been bribed or otherwise induced to help them.[5] The obstruction of justice charge against appellant was all the more surprising given her background. A twenty-seven-year-old single mother raising three young children, appellant had no prior criminal record whatsoever, nor any history of substance abuse. Until her arrest in this case, she had been employed for four years in an administrative office position at George Washington University at an annual salary of approximately $40,000.

Notwithstanding appellant's positive personal characteristics, the prosecutor asserted that no conditions on her release pending her trial would be sufficient to protect the public safety. Appellant, the prosecutor argued, had demonstrated her willingness to obstruct justice to help someone with whom she had only a "tenuous" connection; she would have a much greater incentive to obstruct justice now that her own liberty was at stake.

Relying on the "egregious" circumstances of the charged offense, the trial court decided to detain appellant. The court orally explained its ruling as follows:

The evidence this Court hear[d] basically breaches the tenets of the Constitution in this judicial system where an acquaintance, relative, wife of the defendant on trial communicates with a member of the jury during the trial and even during deliberations which causes a mistrial. That in and of itself is so egregious that this Court cannot find there are conditions or a combination of conditions that would assure the safety of this community....

Appellant's counsel inquired whether the court had found by a substantial probability that appellant had threatened, injured, or intimidated a prospective juror; under D.C.Code § 23–1322(c)(2), which counsel cited to the court, such a finding would have triggered a rebuttable presumption that no conditions of release would reasonably assure the safety of other persons and the community. In response, the court stated that it was holding appellant under D.C.Code § 23–1322(b)(1)(C). See footnote 2, *supra.* Along with both appellant and the government, we understand this response to mean that the trial court did not make any finding that would implicate the statutory presumption of dangerousness.

Following the September 2 hearing, the government submitted proposed findings of fact and conclusions of law in a draft order of detention pending trial. The trial court eventually adopted the government's submission verbatim by signing the proposed detention order on October 28, 2005 (two months after the hearing).[6] As the

informed the court that he or she recognized the name of the decedent and the decedent's girlfriend.)

5. Appellant's defense counsel theorized that Fortson and Williams might have "reached out" to appellant, intimidated her, and coerced her into disrupting the jury deliberations, but there was no evidence of that.

6. Unfortunately, the trial court did not enter the detention order on the docket or send copies of the signed order to the parties until March 9, 2006. Because of this delay, which has not been explained, the parties were unaware that the trial court had adopted the government's proposed findings and conclusions when they appeared before us for oral argument on March 1, 2006. At

rationale for detaining appellant based on the evidence summarized above, the order states that "this is a crime that shocks the conscience" and that

> Defendant Blackson has shown by her actions that she was willing to obstruct justice for a casual acquaintance. The Court can therefore have no confidence that if given the opportunity she would [sic [7]] obstruct justice again when her own liberty interest is at stake. She knows the identity of the jurors from the first trial who, by necessity, will be witnesses for the obstruction trial. Accordingly, there is a serious risk that [Blackson] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness or juror.

On January 9, 2006, four months after appellant was detained, she filed a motion asking the trial court to reconsider her bond status.[8] In addition to reciting the facts in appellant's favor that had been brought out at the detention hearing, such as her lack of any criminal record and her history of employment, the motion stated that questions had arisen in the aftermath of her detention about her psychological history and well-being. Appellant did not specify what those questions were, however. Stating that nothing had changed, the trial court denied the motion for reconsideration at a January 30 status hearing. Appellant filed a timely notice of appeal, together with a motion for summary reversal. The government responded with a motion for summary affirmance.

## II.

■ Before we address the merits of the trial court's order of detention, which appellant claims is not supported by the record, we need to lay to rest questions raised by the government regarding our jurisdiction to entertain this appeal. As the government's counsel pointed out at oral argument, in other contexts we have held that the denial of a motion to reconsider is not an appealable order. *See Swann v. United States,* 785 A.2d 663, 664 (D.C.2001) (motion to reconsider denial of motion to dismiss indictment on double jeopardy grounds); *Taylor v. United States,* 603 A.2d 451, 458 (D.C.1992) (motion to reconsider denial of motion to vacate conviction); *In re Alexander,* 428 A.2d 812, 815 (D.C.1981) (motion to reconsider criminal contempt adjudication); *United States v. Jones,* 423 A.2d 193, 196 (D.C.1980) (motion to reconsider dismissal of indictment). The operative principle is that where a timely appeal is not taken from a final order of the trial court, the would-be appellant cannot extend the time for appeal by the simple expedient of moving the trial court to reconsider its decision. Otherwise no decision would be truly final.

■ We have not applied this principle to interlocutory appeals from denials of motions to reconsider pretrial detention orders, however. In two cases involving juveniles detained pursuant to D.C.Code § 16–2312 (2001), we have held that the denial of a motion to reconsider a pretrial

---

that time, the government erroneously advised us that the trial court had issued no written explanation of its decision. This error was not corrected until March 10, 2006, when the government filed a post-judgment motion to supplement the record on appeal with the trial court's order docketed the previous day.

7. The word "not" obviously was omitted inadvertently.

8. A bond appeal filed by appellant in the interim was dismissed by this court as untimely.

detention order is an appealable "final" order in its own right, "cognizable by the court" even though the appellant did not take a timely appeal from the original order of detention. *See In re K.H.*, 647 A.2d 61, 62–63 (D.C.1994); *In re DeJ.*, 310 A.2d 834, 835 (D.C.1973).[9] We see no reason not to follow those precedents in the present case. It makes no material difference for purposes of our jurisdiction whether the appellant is a juvenile charged with a delinquent act and detained under D.C.Code § 16–2312 or an adult charged with a felony offense and detained under D.C.Code § 23–1322. In either case, a pretrial detention hearing usually is held on short notice at the beginning of the prosecution. Newly-engaged defense counsel typically has only limited time to prepare to contest the government's request, and the trial court ordinarily must rule on the detention motion on a hastily developed record, expeditiously and with less than optimal time for reflection. As a result, it is understood in every such case that the court may be prevailed upon to revisit a pretrial detention order, and motions for reconsideration of detention are routine. Such motions permit counsel for both sides to marshal additional informa-

tion and refine their arguments, and they afford the trial court the opportunity to render more informed, considered, and, indeed, final decisions on an augmented record.[10] Given the inherently provisional nature of the trial court's initial detention order, and the valuable role that a motion for reconsideration may play in amplifying the record and in the trial court's ultimate decision on detention, it is appropriate to permit either party to appeal the ruling on such motions. (Government appeals are authorized by D.C.Code § 23–1324(d).) In line with our decisions in *K.H.* and *DeJ.*, we therefore hold that the denial of a motion to reconsider a pretrial detention order under D.C.Code § 23–1322 is appealable to this court even if no timely appeal was or could be taken from the initial order of detention itself. Accordingly, we hold that we have jurisdiction to entertain the appeal now before us.[11]

### III.

On appeal, this court must affirm an order of pretrial detention "if it is supported by the proceedings below. If the order is not so supported, the court may remand the case for a further hearing, or

---

9. In support of the conclusion that this court's appellate jurisdiction was intact, the opinion in *DeJ.* cited, *inter alia, Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951)— referring, we presume, to the Supreme Court's statement that "[t]he proper procedure for challenging bail as unlawfully fixed is by motion for reduction of bail and appeal to the Court of Appeals from an order denying such motion." *Id.* at 6, 72 S.Ct. 1.

10. The pretrial detention statute envisions that the detention hearing "may be reopened at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of the person as required or the safety of

any other person or the community." D.C.Code § 23–1322(d)(6). We do not read this provision as precluding a motion for reconsideration that is not based on newly discovered information (though other grounds ordinarily would not require reopening the hearing to receive additional evidence).

11. We are not persuaded by the government's alternative argument, that any jurisdiction we may have to review the denial of a motion for reconsideration must be restricted to considering whether the motion proffered changed circumstances that would justify lifting the original order of detention. Our opinion in *In re DeJ.* recognized no such limitation on the scope of our review, *see* 310 A.2d at 835–36, and we think it would serve no useful purpose.

may, with or without additional evidence, order the person released pursuant to [D.C.Code] section 23–1321(a)." D.C.Code § 23–1324(b). "In general," therefore, "our review of a preventive detention order is limited." *Pope v. United States,* 739 A.2d 819, 824 (D.C.1999). We defer to the trial court's factual findings unless they are clearly erroneous, and so long as the evidence "provide[s] sufficient support for the trial court's order," we will not substitute our judgment of a defendant's dangerousness for that of the judge who heard the evidence. *Martin v. United States,* 614 A.2d 51, 53 (D.C.1992). The sufficiency of the evidentiary support for an order of detention is, however, like other sufficiency-of-evidence issues, a question of law that we review *de novo. See, e.g., United States v. Bamiduro,* 718 A.2d 547, 550 (D.C.1998) ("This court reviews the sufficiency of the evidence *de novo,* applying the same standard as the trial court."); *see also Pope,* 739 A.2d at 825.

■■■ D.C.Code § 23–1322 sets forth specific requirements that must be fulfilled before a defendant may be detained. The requirements are "strictly construed to ensure that defendants are not detained without bond 'unless the lawmaker has clearly said they should be.'" *Pope,* 739 A.2d at 825 (citations omitted). Adherence to the statutory requirements is imperative, for "liberty is the norm" to which pretrial detention is intended to be a "carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). "Because preventive detention implicates basic constitutional liberties, especially careful review by this court is warranted." *Pope,* 739 A.2d at 825. Whether the detention proceedings comported with the procedural requirements of the statute is, of course, a legal question on which we owe no deference to the trial court.

■■■ The government in this case having moved for pretrial detention on grounds of future dangerousness rather than risk of flight, the statute allowed the trial court to detain appellant only upon a finding by "clear and convincing evidence that no condition or combination of conditions will reasonably assure ... the safety of any other person and the community." D.C.Code § 23–1322(b)(2). The trial court thus needed clear and convincing evidence that appellant posed "an identified and articulable threat to an individual or the community" and that nothing short of detention would reasonably suffice to "disable [her] from executing that threat." *Salerno,* 481 U.S. at 751, 107 S.Ct. 2095. In making its determination of appellant's dangerousness, the trial court was required to consider more than just the nature and circumstances · of the offense charged and the weight of the evidence against appellant. The court also was obliged to "take into account" both her personal "history and characteristics" (including, the statute specifies, her lack of any criminal record, the absence of any history of drug or alcohol abuse, her family and community ties, and her gainful employment), and the "nature and seriousness of the danger to any person or the community that would be posed" by appellant's release. D.C.Code § 23–1322(e). After balancing the relevant factors, the court was required to set forth its findings of fact in writing, along with a written statement of its reasons for detaining appellant. D.C.Code § 23–1322(g)(*l* ).

■■■ There was inadequate compliance with these statutory requirements in this case. First, the court detained appellant without making an express finding by clear and convincing evidence that no conditions of release will reasonably assure public safety. This is no mere semantic quibble; the record must reflect that the

trial court properly has held the government to its heightened burden of proof.[12] It is true that the detention order submitted by the government after the detention hearing does recite the ultimate clear and convincing evidence finding on which the legality of appellant's detention depended. By the time the trial court signed that order, however, appellant had been detained—in plain violation of the detention statute's requirements—for two months.

 It was error, moreover, for the trial court to base its decision to detain appellant exclusively on the "egregious" circumstances of the charged offense without considering (so far as the record reveals) appellant's personal history and characteristics or what danger to public safety her conditional release realistically would pose.[13] Pretrial detention is not to be employed as a device to punish a defendant before guilt has been determined, nor to express outrage at a defendant's evident wrongdoing. The sole purpose of pretrial detention is to ensure public safety and the defendant's future appearance in court when the government proves that conditions of release cannot be counted upon to achieve those goals. Our past cases have emphasized the critical importance of the defendant's background to a fair prediction of her future dangerousness,[14] and a court cannot make a rational decision to detain a defendant on grounds of future dangerousness without addressing, squarely and realistically, "[t]he nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release," as D.C.Code § 23–1322(e)(4) requires.[15]

12. The standard of proof that the court was required to apply in making these findings, "clear and convincing evidence," is an intentionally elevated one; it means, we have said, "evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Dortch*, 860 A.2d 346, 358 (D.C.2004) (internal quotation marks and citations omitted). "While the 'preponderance' standard 'allows both parties to share the risk of error in roughly equal fashion,' the more stringent 'clear and convincing' standard 'expresses a preference for one side's interests' by allocating more of the risk of error to the party who bears the burden of proof." *Id.* (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)).

13. The detention order drafted by the government and eventually signed by the trial court is also deficient in these respects. Other than merely mentioning that appellant has no prior criminal record (a fact to which the order attributes no significance), the order entirely fails to address appellant's personal "history and characteristics" in the manner mandated by D.C.Code § 23–1322(e). And while the detention order conclusorily evokes the specter of danger to appellant's fellow jurors in Fortson's murder trial, because appellant supposedly knows their identities—actually, no evidence of such knowledge on her part was presented at the detention hearing—and because her "own liberty interest is at stake," the order fails to examine either the realistic likelihood of the perceived threat or whether any conditions of release could be employed to prevent it.

14. As we stated in *Pope,* the "defendant's past conduct is important evidence—perhaps the most important—in predicting his [or her] probable future conduct." 739 A.2d at 827 (internal quotation marks and citation omitted). So, for example, "[s]ubstantial weight must therefore be accorded to the presence in (or absence from) the defendant's record of convictions of dangerous crimes or a history of violent conduct." *Id.*

15. We also think it appropriate to emphasize the importance of the requirement of D.C.Code § 23–1322(g)(1) that the trial court set forth its findings and reasons for detention in a written order. This requirement is not a minor technicality, for written findings are a means of ensuring a thoughtful decision and facilitating expedited appellate review. To achieve these purposes, the trial court should endeavor to issue its written order promptly. If the government, as in this case, submits proposed findings of fact and conclusions of law, it is essential that the judge carefully

All that said, a more fundamental deficiency exists on the record before us. We reversed the order of detention because the record simply does not support a finding by clear and convincing evidence that no conditions of release will reasonably assure the safety of any other person and the community.

As the trial court found and appellant concedes, the government did prove that she committed the offense of obstruction of justice by a "substantial probability."[16] This finding did not give rise to a presumption of future dangerousness, however. A substantial probability finding that appellant had threatened, injured, or intimidated a prospective juror, or had attempted to do so, would have triggered such a (rebuttable) presumption under D.C.Code § 23–1322(c)(2), but the trial court did not make that finding, nor could it have on the record before it. The government acknowledges in its motion for summary affirmance that it "did not seek to establish, and the trial court did not find, that a rebuttable presumption of dangerousness applied."

▮▮▮▮ Ordinarily, in the absence of the statutory presumption, the government's burden to prove future dangerousness by clear and convincing evidence "cannot be satisfied simply by reference to the known facts regarding the crime of which the defendant has been accused."

*Pope*, 739 A.2d at 827. The government argues, however, that even without the aid of the presumption, in some cases a substantial probability finding considered in conjunction with the nature and circumstances of the charged offense is enough to establish clear and convincing evidence of future dangerousness. Sometimes that is so; but only, we think, if the offense truly signals that the defendant threatens to engage in particular *future* criminal conduct. Such a case was *Jones v. United States*, where the "aggravated, even brutal, circumstances of the charged crime"— a grievous assault on a three and a half-month-old baby—"furnished the evidence of dangerousness that in another case (say) a pattern of past and present criminality would provide." 687 A.2d at 575. It might well be thought that an offense of such uncontrolled wantonness bespeaks particularized future dangerousness to the vulnerable infant victim with an abundance of clarity.

▮▮▮▮ The present case is not comparable to *Jones*. We do not minimize the gravity and the brazenness of the charged offense of obstruction of justice, which the trial court aptly called "egregious." That is not the issue. The issue is appellant's future dangerousness if she is released under conditions designed to reduce the risks and protect the community.[17] We

scrutinize the submission for accuracy and balance, and include in the findings any evidence that tends to favor denial of the government's request for detention, as well as the evidence tending to support that request.

**16.** A "substantial probability" is a degree of proof meaningfully higher than probable cause, intended in the pretrial detention statute to be "equivalent to the standard required to secure a civil injunction—likelihood of success on the merits." *United States v. Edwards*, 430 A.2d 1321, 1339 (D.C.1981) (en banc) (internal quotation marks and citations omitted). We have cautioned against equating "substantial probability" with the "clear and convincing evidence" standard. *Jones v. United States*, 687 A.2d 574, 575 (D.C.1996).

**17.** It bears repeating that pretrial release does not mean that appellant will be completely free and unsupervised pending trial. D.C.Code § 23–1321(c) empowers the trial court to condition a defendant's release on a battery of restrictive conditions. These conditions include (but are not limited to) requiring the defendant to remain under the custody and supervision of a designated person or organization; abide by restrictions on personal association, travel, employment and place

certainly agree that a *bona fide* threat of future obstruction of justice constitutes a threat to public "safety" within the meaning of D.C.Code § 23–1322(b)(2); that is so even, we assume *arguendo,* if the threat does not entail the use of violence or intimidation. *See United States v. LaFontaine,* 210 F.3d 125, 134–35 (2d Cir.2000) (upholding detention based on defendant's attempt to influence the testimony of a potential witness in her upcoming trial). Nonetheless, we cannot agree that the admittedly substantial evidence of appellant's obstructive behavior as a juror in someone else's trial amounts, *by itself,* to clear and convincing evidence that she will engage in obstructive behavior to derail her own prosecution if she is released pending trial, no matter what restrictive conditions are placed upon her.

The most specific concern that the government has voiced is that appellant may seek to harm or intimidate her fellow jurors in Fortson's trial, particularly the juror who complained about her refusal to deliberate. All these jurors are potential witnesses against her. But notwithstanding the report that appellant "at one point made gestures as if taking one hand hitting the other hand," and the understandable discomfort felt by the jurors who sat with appellant, to say that her alleged misconduct involved the use of force or intimidation would be an exaggeration. In contrast to the aggravated criminal assault alleged in *Jones,* the offense charged here, serious as it is, does not demonstrate that appellant has a propensity for violence or an inclination to endanger her accuser. Nor is this case like *LaFontaine.* Unlike appellant, the defendant in that case actually tried to influence a potential witness *in the case pending against her,* which

dramatically demonstrated both her proclivity to do so and the ineffectiveness of release conditions to stop her.

Appellant is no longer a juror, of course; her circumstances are and will remain entirely different from what they were when she served as a juror, and the unique criminal opportunity presented to her in her role as a juror will not recur in the foreseeable future. Further, appellant now is in the spotlight. Appropriate conditions on her release will restrict her activities and ensure that she is monitored closely. As a practical matter, moreover, appellant hardly could expect to engage in witness tampering or intimidation without its being detected, which (as she must know) almost certainly would result in the immediate revocation of her release (not to mention other adverse consequences). *See* D.C.Code § 23–1329. Against these considerations, the government's argument that appellant has a much greater motive to thwart justice in her own case than in the Fortson trial is not without logical force, but it does not meet the government's burden. A variant of that argument could be made to support the pretrial detention of virtually any defendant; it is no substitute for the clear and convincing proof of future dangerousness that the statute demands.

Is there other evidence in the record probative of appellant's future dangerousness in addition to the nature and circumstances of the charged offense and the strength of the case against her? There is not. To the contrary, while it is not our function in a bail appeal to engage in the discretionary balancing of relevant factors that is committed to the trial court, the

---

of abode; comply with a curfew or home detention; avoid all contact with potential witnesses; refrain from possessing any dangerous weapon; refrain from excessive use of alcohol or use of illegal drugs; participate in psychiatric or other counseling and treatment; and report regularly to a designated law enforcement agency or other body.

undisputed facts about appellant that the trial court did not address—her lack of any criminal record, the absence of any history of substance abuse, her employment history, and her status as a single parent raising three children on her own salary—all weigh against any finding that her release will pose a threat to the safety of any other person or the community. *Compare Pope,* 739 A.2d at 828–29.

For the foregoing reasons, we concluded as a matter of law that the order detaining appellant was not "supported by the proceedings below" and could not stand. D.C.Code § 23–1324(b). In accordance with the statute, we reversed the order of detention and directed the trial court to release appellant on appropriate conditions.

*So Ordered.*