**Raymond E. BRADSHAW, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12–CO–1653.**

District of Columbia Court of Appeals.

Decided Nov. 1, 2012.

James Klein, Jaclyn S. Frankfurt, and David Maxted, Public Defender Service, were on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, Elizabeth Trosman, John P. Mannarino, Kenya Davis, and James M. Perez, Assistant United States Attorneys, were on the brief for appellee.

Before BLACKBURNE–RIGSBY and BECKWITH, Associate Judges, and NEWMAN, Senior Judge.

PER CURIAM:

Raymond E. Bradshaw, Jr. seeks Summary Reversal of an Order of the Superior Court detaining him without bond pursuant to the provisions of D.C.Code § 23–1322(b)(1)(C) (Supp.2012). Concluding that the trial judge did not clearly consider the statutory requirements of the "nexus" between past conduct and whether there exists "a serious risk that the person will ... threaten, injure, or intimidate, [or attempt to do so as to] ... a prospective witness," we remand for the trial court to further consider this issue.[1]

On September 13, 2012, Bradshaw was charged by information with solicitation of murder, in violation of D.C.Code § 22–2107(A). At the request of the government, he was held without bond pending a detention hearing. Several hearings were held thereafter.

Raymond Bradshaw has been married to Cheryl Bradshaw for twenty years. They are estranged having lived separate and apart since 2010. In May of 2011, Cheryl Bradshaw filed a complaint for absolute divorce. She is now the alleged victim of the murder solicitation leading to a criminal complaint against Raymond Bradshaw.

At a hearing on September 19, the government presented evidence that on September 1, 2012, Mr. Bradshaw complained to his sister, Joyce Christian, about his unsuccessful attempts to place voodoo and "root work curses" on his estranged wife. He complained to her "this shit ain't working" and that he was going to have to "take a contract" on her. He asked Christian whether her sixteen-year-old, mentally handicapped son could perform the murder since he "wouldn't get much time." He later asked his niece, Yvette Street, whether she "knew of anyone that could assist with having his wife killed." There was evidence that Mr. Bradshaw had discussed having his wife killed since 2010, saying that if he could not have her, nobody else could. When Ms. Bradshaw was

---

1. Likewise we conclude that the trial court failed to adequately articulate its consideration of whether any other condition or combination thereof will reasonably assure the safety of others and the community as also provided by D.C.Code § 23–1322(b)(1).

advised of the murder solicitation by Christian, she contacted the police and applied for a civil protection order. She advised the police that Mr. Bradshaw "has the money and means to hire" a contract killer. She also informed the police that Mr. Bradshaw used to go around looking for her at her home, place of employment and church, at various times, including the middle of the night, because of her efforts to prevent him from knowing her whereabouts.

With respect to the pending divorce proceedings, there was evidence that Mr. Bradshaw failed to show up for certain court proceedings and "would make up excuses about being sick or having other appointments, taking care of other matters." Ms. Bradshaw was of the opinion "[t]hat's why they're still going through their divorce."

Mr. Bradshaw presented no evidence. Based on the above showing, Judge Sullivan found probable cause that Mr. Bradshaw had solicited the murder of his wife and ordered him further detained pursuant to D.C.Code § 23–1322(b)(1)(C).[2]

On September 20, by motion, Mr. Bradshaw sought reconsideration of his detention, contending that the government had failed to satisfy both the future danger requirement and the requisite connection between his conduct as alleged and Ms. Bradshaw's status as a prospective witness. The government filed a written opposition urging that Mr. Bradshaw's conduct "truly signals that the defendant threatens to engage in *future* criminal conduct" (emphasis in original) in light of the pending divorce proceedings and that killing Ms. Bradshaw would result in her inability to be a witness in those proceedings. Pursuant to an order from the court, the government made a supplemental filing outlining the events which it contended justified detention.

Hearings were held on Mr. Bradshaw's motion on September 21, 24 and 27. Based on the evidence presented and submissions during those hearings, as well as the evidence presented at the initial hearing on September 19, Judge Pasichow found that detention was authorized by § 23–1322(b)(1)(C) based on: 1) clearly established probable cause for solicitation of murder; 2) Mr. Bradshaw's history of "severe depression with acute suicidal" thoughts; 3) prior abusive behavior toward Ms. Bradshaw; 4) threats to Ms. Bradshaw in 2010; 5) threats to kill Ms. Bradshaw and himself in February 2011; 6) his efforts to halt the divorce proceedings which make it clear that he is suffering the consequences of the separation initiated by his wife; 7) his jealous pronouncement that if I can't have her, no one can; and 8) stalking and harassment of Ms. Bradshaw, her family and friends.

This appeal and Emergency Motion for Summary Reversal followed. As aforesaid, Mr. Bradshaw contends: 1) the evidence fails to establish the necessary "nexus" between his conduct and Ms. Bradshaw's status as a prospective witness in the divorce proceedings as is required by § 23–1322(b)(1)(C), citing *Covington v. United States,* 698 A.2d 1033 (D.C.1997), and 2) the trial court did not consider and evaluate alternatives to preventive detention as is required by § 23–1321(c).

Our review of a "preventive detention order is limited." *Pope v. United States,* 739 A.2d 819, 824 (D.C.1999). *Accord Blackson v. United States,* 897 A.2d

---

**2.** Solicitation to murder is not one of the enumerated crimes of violence or danger as provided by § 23–1322(b)(1)(A).

187, 194 (D.C.2006). We review for evidentiary sufficiency and like in other evidentiary sufficiency issues, "must affirm [if the detention order] ... is supported by the proceedings below." *Blackson*, 897 A.2d at 193 (internal quotation marks omitted); D.C.Code § 23–1324(b) (2001). We defer to the trial court's factual findings, including "dangerousness," *Pope*, 739 A.2d at 824, unless the trial court's findings lack evidentiary support. *Blackson*, 897 A.2d at 194.

We have had one previous occasion to directly address the requisite "nexus" between the past conduct and the availability of preventive detention under § 23–1322(b)(1)(C) to prevent a serious risk of threats, injury, or intimidation of a prospective witness. We did so in *Covington v. United States*, 698 A.2d 1033 (D.C.1997).

*Covington* arose from a child neglect proceeding, the child being that of Covington and T.K. Covington was charged with a misdemeanor threats offense because of threats directed toward T.K. Covington appealed his pretrial detention. By unpublished Order, we reversed because: 1) there was no showing that T.K. was a "prospective witness" or that Covington knew that she was a prospective witness; and 2) there was no nexus between the alleged threats and T.K.'s purported status as a prospective witness. We published the *Covington* opinion thereafter since the "appeal presented questions not previously addressed by this court." We held that since there was no showing that T.K. was a prospective witness in a future judicial proceeding or that Covington knew she was to be, § 23–1322(b)(1)(c) was simply inapposite. We stated:

> Even if T.K. had been shown to be a "prospective witness," the evidence was insufficient ... to establish any nexus between the alleged threats and T.K.'s

hypothetical status. *Covington*, 698 A.2d at 1036.

We further stated:

> We do not suggest that the existence of the required nexus necessarily depends on proof of a statement or acknowledgement by the defendant linking the threat to the prospective witness' status.... The judicial officer is free to consider all the evidence, direct and *circumstantial*, in determining whether a purposeful relationship exists between the threat and the victim's forthcoming testimony.

*Covington*, 698 A.2d at 1036 n. 5 (emphasis added).

The provisions of the preventive detention statute in the District of Columbia which are of issue in this case, as in *Covington*, speak to preventing future crimes of a certain magnitude or of preventing future attempts to obstruct justice or future attempts to threaten, injure or intimidate a prospective witness or juror. If the court concludes that there is a "serious risk that the defendant will ... attempt to threaten, injure, or intimidate a prospective witness," and clear and convincing evidence shows no conditions can prevent such attempts to threaten, injure or intimidate a prospective witness, then the court "shall order" pretrial detention. D.C.Code § 23–1322(b)(1)(C), –1322(b)(2). *See Edwards v. United States*, 430 A.2d 1321, 1332 (D.C.1981) (en banc), *cert. denied* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982) (the traditional reasons for pre-trial detention, preventing flight or intimidation of witnesses, are designed to preserve the integrity of the judicial process by preventing future conduct).

■ In making the reasoned judgment that a trial judge is required to make by our preventive detention statutes, evidence of past conduct is relevant in so far as it has a tendency to make a fact more or less probable than it would be without the evi-

dence. *See Punch v. United States*, 377 A.2d 1353, 1358 (D.C.1977). *Cf.* Fed. R.Evid. § 401 ("more or less probable than it would be without the evidence.") The trial judge must consider all the relevant evidence, both direct and circumstantial, to make the reasoned judgment about the defendant's likely conduct in the future in determining whether the evidence is sufficient to establish that there exists the requisite "serious risk" of attempted witness intimidation as contemplated by § 23–1322(b)(1)(C).

Here, the government in its Opposition to Bradshaw's Motion for Summary Reversal urges that Bradshaw's reliance on *Covington* is misplaced. It contends that, unlike in *Covington*, Ms. Bradshaw was in fact a prospective witness in a judicial proceeding, a fact that was known to Mr. Bradshaw. It contends that the findings of Judge Pasichow adequately established the relationship between her witness status and Mr. Bradshaw's conduct, to enable the trial judge to make the predictive judgment of "serious risk" of future witness intimidation.

We do not resolve this question at this time since two problems require us to remand this matter to the trial court for further proceedings. The trial court record raises some measure of doubt as to whether the trial judge applied the correct legal test on the "nexus" issue. At one point, the trial judge noted the necessity of the link between Mr. Bradshaw's conduct and Ms. Bradshaw's status as a prospective witness and that there was circumstantial evidence making the link. However, her comments at another point may be read to mean that the mere temporal concurrence of the conduct and the divorce proceedings suffices. We do not mean that this is the only reading—it is a logically permissible one.

Perhaps more significantly, the record does not show that the trial court adequately articulated its consideration of the requirement that it consider and determine whether any other combination of conditions will reasonably assure the safety of others as is required by § 23–1322(b)(1).[3]

Thus, we remand this case to the trial court for further proceedings consistent with this opinion.

*So ordered.*

Concurring opinion by Associate Judge BECKWITH at pages 398–99.

Concurring opinion by Senior Judge NEWMAN at page 400.

BECKWITH, Associate Judge, concurring in the result:

I concur in the result and agree with the Per Curiam opinion that the trial court on remand must make specific findings whether clear and convincing evidence exists that "no condition or combination of conditions [under D.C.Code § 23–1321(c)] will reasonably assure . . . the safety" of

---

**3.** The provisions of D.C.Code § 23–1322(c)(2) appear to be relevant to this determination. It provides:

There shall be a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community if the judicial officer finds by probable cause that the person . . . [h]as threatened, injured, intimidated, or attempted to threaten, injure, or intimidate . . . a prospective witness . . . in any criminal investigation *or* judicial proceeding[.]

(emphasis added).

While the statute does not specify whether or not "judicial" proceedings include other than "criminal" ones, the plain language of the statute would appear to include judicial proceedings seeking divorce. *See Needle v. Hoyte*, 644 A.2d 1369, 1372 (D.C.1994) (when the language is plain and unambiguous, we look to that language to interpret it).

Ms. Bradshaw. D.C.Code § 23–1322(b)(2) (2001). I also agree with the Per Curiam opinion to the extent that it orders this case remanded because the trial court did not adequately apply this court's holding that § 23–1322(b)(1)(C) authorizes pretrial detention for threatening conduct against a prospective witness only when the government establishes a "nexus" or "purposeful relationship ... between the threat and the victim's forthcoming testimony." *Covington v. United States*, 698 A.2d 1033, 1036 & n. 5 (D.C.1997).

I disagree, however, with any suggestion that this court's opinion in *Covington* is anything less than binding precedent interpreting the provision of § 23–1322 that pertains to pretrial detention of defendants who pose a "serious risk" to "prospective witness[es]." D.C.Code § 23–1322(b)(1)(C). As such binding authority, *Covington* continues to tie § 23–1322(b)(1)(C) to its "traditional moorings in obstruction of justice jurisprudence." 698 A.2d at 1037; *see also id.* at 1036 & n. 6.

The reasoning of *Covington* cannot be squared with the view that a trial court may apply a mere relevance standard when considering whether all of a defendant's past conduct supports a predictive finding of serious risk to a prospective witness. *Covington* explicitly requires more. It stands for the proposition that for § 23–1322(b)(1)(C) to apply to a case where the defendant has threatened a prospective witness, the statute's focus on preventing witness tampering requires that the trial judge find a connection, or "purposeful relationship," between the past threats and the witness's forthcoming testimony. 698 A.2d at 1036–37, 1036 n. 6. As the government notes in its opposition to appellant's emergency motion for summary reversal of the detention order,

§ 23–1322(b)(1)(C) at least requires proof that "a defendant's motive for making a threat [was] tied to the victim's status as a witness."

I resist, as does *Covington's* explicit holding, any attempt to cloud § 23–1322(b)(1)(C)'s relationship to other distinct provisions of the pretrial detention statute that authorize detention where the defendant is accused of a crime of violence and thus demonstrates a risk of further violent conduct.[4] *See* D.C.Code § 23–1322(b)(1)(A). Any such efforts have the potential to undermine § 23–1322(b)(1)(C)'s foundation in obstruction of justice jurisprudence by allowing a trial judge to rely upon any past conduct with some minimal relevance to a prediction of future threats to a witness. We have said that "the defendant's past conduct is important evidence—perhaps the most important—in predicting his [or her] probable future conduct." *Blackson v. United States*, 897 A.2d 187, 195 n. 14 (D.C.2006) (quoting *Pope v. United States*, 739 A.2d 819, 827 (D.C.1999)). Yet we are bound to follow *Covington's* holding that evidence of past threats with no nexus to the victim's status as a prospective witness is insufficient to establish a serious risk of obstruction of justice.

We must continue to adhere to the principle that pretrial detention to prevent interference with witnesses or jurors is authorized only "in the extreme or unusual case." *Carbo v. United States*, 82 S.Ct. 662, 668, 7 L.Ed.2d 769 (1962) (Douglas, Circuit Justice). To do otherwise would represent the kind of "major expansion of the availability of pretrial detention in witness intimidation situations" that this court sought to avoid with its opinion in *Covington*, 698 A.2d at 1036 n. 6, and would be

---

4. The parties here agree that § 23–1322(b)(1)(C) is the only pretrial detention provision under which Mr. Bradshaw could be held.

inconsistent with the long-held principle that "[i]n our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 1037 (quoting *United States v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). These concerns argue in favor of remand for the trial court to carefully weigh the appropriateness of pretrial detention here, where a 63–year–old defendant with no criminal record or history of physical abuse against his wife faces serious charges of inquiring into the possibility of having her murdered.

NEWMAN, Senior Judge, concurring:

Having authored the Per Curiam for the division, I write separately to express some additional views.

"Nexus" as used in *Covington* denotes a "predictive relationship." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED. Defendants seldom make their intentions, present or future, explicit. *See Lee v. United States,* 699 A.2d 373, 383 (D.C.1997). Thus as we opined in *Covington,* stating what we have repeatedly said in like context: "If the defendant knows that the victim is a prospective witness, the judicial officer is free to consider all the evidence, direct and circumstantial in determining ... [the issue]." *Covington,* 698 A.2d at 1036 n. 5.

In my view, what the Supreme Court said in *Giles v. California,* 554 U.S. 353, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), bears noting. *Giles* involves an issue of whether the defendant had forfeited his right to cross-examine a witness against him in a criminal prosecution. The Court held that the Confrontation Clause only permitted the forfeiture doctrine to be applicable when the defendant "engaged in conduct designed to prevent the witness from testifying" by killing the witness. *Giles,* 128 S.Ct. at 2683.

In addressing the issue of intent to prevent a witness from testifying, the Court said:

The domestic-violence context is, however, relevant for a separate reason. Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions. Where such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution—rendering her prior statements admissible under the forfeiture doctrine. Earlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry, as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify.

*Giles,* 554 U.S. at 377, 128 S.Ct. 2678.

Consider this hypothetical. Defendant attempts to kill victim in January. He again attempts to kill victim in February. Victim sues defendant for money damages because of these two attempted killings. The defendant is served with the summons and complaint thus becoming aware that the victim is a prospective witness against him in a judicial proceeding. Thereafter, he attempts to kill the victim a third time. All this occurs in the jurisdiction of Ames where the only preventive detention statute is like our § 23–1322(b)(1)(C) i.e., intimidation etc., of prospective witnesses. Can anyone reasonably contend that a trial judge in Ames could not properly conclude that the evidence of the two attempts to kill, pre-litigation, coupled with the one after the defendant was aware that the victim was a prospective witness in the

litigation against him, is sufficient to permit the trial court to make the predictive judgment necessary to order preventive detention?

Although the Per Curiam did not find it necessary to determine whether the evidence before Judge Pasichow was sufficient to permit her, applying the proper legal standard, to make the predictive judgment required for preventive deten-

tion under § 23–1322(b)(1)(C), I do. If I were not of the view that there was such a sufficient basis, I would vote to reverse rather than remand.